UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BOBBY MUNIZ, on Behalf of Himself and on Behalf of All Others Similarly Situated, | § § § § § § § § § § § § § | |
| | | CASE NO. 5:23-cv-02768 |
| Plaintiff, | | |
| | | |
| V. | | COMPLAINT – CLASS ACTION |
| | | |
| AMAZON.COM SERVICES, LLC, | | |
| | | |
| Defendant. | | |

**PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT AND JURY DEMAND**

**I.  INTRODUCTION**

1. This is a class action lawsuit brought by Plaintiff Bobby Muniz ("Plaintiff"), individually and on behalf of all others similarly situated ("Class Members") to recover unpaid wages, penalties, and attorneys' fees and costs. Defendant Amazon.Com Services, LLC ("Amazon") implemented an illegal policy requiring its non-exempt workers to undergo a COVID-19 screening each shift without pay. This physical and medical examination constitutes compensable time that was worked by the Plaintiff. By failing to pay for this time worked, Amazon has violated Pennsylvania law. In addition to the Plaintiff, Amazon has failed to pay for the time spent undergoing COVID-19 screenings by thousands of other workers across the Commonwealth of Pennsylvania.  Members of the Class are referred to hereinafter as the "Class Members."

2. Amazon's conduct violates the state laws of Pennsylvania because Amazon failed to pay all wages due as required by the Pennsylvania Minimum Wage Act (PMWA), 43 P.S. §§ 333.101 *et seq*.  Plaintiff seeks all available relief under the PMWA.

1

## II.     JURISDICTION AND VENUE

3. This Court has jurisdiction over subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Under CAFA, this court has original jurisdiction over Plaintiff's Rule 23 class action claims because the matter in controversy is believed to exceed $5,000,000, and because Plaintiff and Defendant are citizens of different states. Moreover, the number of proposed class members in Pennsylvania is believed to exceed 100 individuals.

4. Venue is proper in this District because a substantial portion of the events forming the basis of this suit occurred in this District. In particular, Plaintiff worked in this District and was denied wages in this District.

5. Amazon is subject to personal jurisdiction before this Court because it has purposefully availed itself of the privileges of conducting activities in the Commonwealth of Pennsylvania and established minimum contacts sufficient to confer jurisdiction. Amazon does business in Pennsylvania, advertises in Pennsylvania, markets to Pennsylvania consumers, and the violations of the law forming basis of this lawsuit occurred in Pennsylvania. Further, Amazon maintains offices in Pennsylvania and employs Pennsylvania residents. Therefore, the assumption of jurisdiction over Amazon will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process. Finally, Amazon has registered to do business in Pennsylvania and maintains a registered agent for service of process in Pennsylvania. As a result, Amazon has consented to personal jurisdiction in Pennsylvania.

6. This Court is empowered to issue a declaratory judgment and further relief pursuant

to 28 U.S.C. §§ 2201 and 2202.

### III. PARTIES AND PERSONAL JURISDICTION

7. Plaintiff Bobby Muniz is an individual residing in Pennsylvania. At all relevant times, Plaintiff has been domiciled in and is a resident of the Commonwealth of Pennsylvania.

8. The "Class Members" are all current and former hourly paid employees of Amazon who underwent a COVID-19 screening during at least one week in Pennsylvania in the three-year period before the filing of the Original Complaint until final resolution of this Action.

9. Defendant Amazon.com Services, LLC is a Delaware limited liability company with its principal place of business located in Seattle, Washington. Defendant can be served with process by serving its registered agent Corporation Service Company at 2595 Interstate Dr., Suite 103, Harrisburg, PA 17110.

10. At all material times, Amazon was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this Complaint, as the employer of Plaintiff and the Class Members.

11. At all material times, Amazon has been governed by and subject to the PMWA.

12. At all material times, Plaintiff has been an employee within the meaning of the PMWA. *See* 42 P.S. § 333.103(h).

13. At all material times, Amazon has been an employer within the meaning of the PMWA. *See* 42 P.S. § 333.103(g).

14. At all material times, Amazon was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this Complaint, as the employer of Plaintiff and Class Members.

# IV. FACTS

15. The novel Coronavirus has infected over 100 million Americans and caused the death of over one million Americans. (*See* https://coronavirus.jhu.edu/us-map, last visited July 17, 2023).[1] Following the outbreak of the Coronavirus, Amazon implemented a company-wide policy requiring each of its hourly, non-exempt employees to undergo a physical and medical examination to check for symptoms of the Coronavirus each shift. This examination was imposed by Amazon as a requirement to work each shift. The examination was conducted on the premises of Amazon, was required by Amazon, and was necessary for each employee to perform his/her work for Amazon. Amazon did not pay employees for the time they spent undergoing the examination. Amazon's conduct violates Pennsylvania law.

16. Amazon operates fulfillment centers and distribution centers in Pennsylvania and across the country. These Amazon facilities are large warehouses that normally operate 24 hours per day. These Amazon facilities are the warehouses where Amazon stores the packages that are delivered to customers. Upon information and belief, Amazon employs more than 30,000 workers in Pennsylvania at distribution centers and fulfillment centers throughout the state.

17. Plaintiff worked for Amazon as an hourly, non-exempt employee at the Easton fulfilment center in Pennsylvania. He was an employee as a fulfillment center associate. He worked from approximately May 2020 to October 2020. He was paid an hourly rate of approximately $16.50 per hour. His job duties included moving boxes, stacking packages, and loading boxes. Plaintiff primarily worked a schedule from Sunday night to Wednesday, between 5:30 pm to 4:00 am. In one or more individual workweeks during his employment, Plaintiff

---

[1] COVID-19 has infected nearly four million Pennsylvania residents, and has resulted in approximately 50,000 confirmed deaths. (*See* https://coronavirus.jhu.edu/region/us/Pennsylvania, last visited July 17, 2023).

worked 40 or more hours. When adding the unpaid work described in this Complaint, Plaintiff regularly worked more than 40 hours each week he went through a COVID-19 screening.

18. Plaintiff worked with hundreds of other Amazon workers at the Easton fulfillment center.

**PLAINTIFF AND CLASS MEMBERS WERE NOT PAID FOR ALL WORK TIME AS A RESULT OF COMPLETING COVID-19 SCREENINGS "OFF THE CLOCK"**

19. Amazon required Plaintiff to clock-in and clock-out each day.

20. Following the outbreak of the Coronavirus, Amazon prevented Plaintiff from clocking in when they first arrived at Amazon's facility. Instead, prior to allowing Plaintiff to clock in each day, Amazon required Plaintiff to undergo a physical and medical examination to screen for symptoms of COVID-19.

21. Although the COVID-19 screening was required by Amazon, Amazon did not pay any of its employees, including Plaintiff, for the time spent undergoing the COVID-19 screening.

22. As a direct result of Amazon's COVID-19 screening, Amazon did not pay Plaintiff and other Class Members for all hours they worked at Amazon's facilities.

23. In particular, prior to the start of their shifts, Amazon employees were required to form a line at the entrance to the facility and to stand six feet apart. Amazon employees were then called one-by-one to a checkpoint where the COVID-19 screening took place. Each employee whose shift was set to begin was required to undergo a temperature check and to answer questions about his/her health. If the employee passed the examination, he/she was then given a mask to wear. After putting on the mask, the employee then walked to the next station where the employee was allowed to clock-in for the day.

24. The amount of time it takes to wait in line and undergo the COVID-19 examination was approximately 10 minutes to 15 minutes on average. This amount of time could be longer

depending upon the number of other Amazon employees in line for the COVID-19 screening. The COVID-19 screening occurred each day at each Amazon facility in Pennsylvania and no Amazon employee could work without first passing the COVID-19 screening.

25. Plaintiff is aware that other Amazon facilities in Pennsylvania have COVID-19 screening procedures because there were multiple notices posted around the facility indicating that COVID-19 screening and prevention practices were being instituted across Amazon at a corporate-wide level.

26. This COVID-19 screening should have been paid by Amazon because it constitutes compensable time worked. During this time, Plaintiff and Class Members were subject to Amazon's control.

27. Plaintiff and the Class Members were required to follow Amazon's instructions while awaiting and during the COVID-19 screening. Amazon required every employee to complete the COVID-19 screening and it was not optional. Indeed, the COVID-19 screening was required by Amazon and its employees were required to comply under threat of discipline, including possible termination.

28. Additionally, Plaintiff and the Class Members were confined to the premises of Amazon when they waited for the examination and during the examination.

29. Moreover, Amazon compelled its employees to perform specific tasks during the examinations. They were required to answer questions, submit to have their temperature taken, and wear masks.

30. In other words, Amazon directed, commanded, and restrained its employees during the COVID-19 examinations; prevented them from using that time effectively for their own purposes; and Plaintiff and the Class Members remained subject to Amazon's control during the

examinations.

31. The COVID-19 screenings were also necessary to the principal work performed by Plaintiff and the Class Members and were necessary to ensure a safe workplace. The COVID-19 examinations were also undertaken on Amazon's premises, were controlled and required by Amazon, and undertaken primarily for the benefit of Amazon.

32. Indeed, Amazon required Plaintiff and the Class Members to undergo this screening for the purposes of overall safety in the Amazon facilities and to prevent Plaintiff and the Class Members from inadvertently and unintentionally infecting the Amazon facilities or Amazon products, and in turn, Amazon's customers. Likewise, the job duty of Plaintiff and the Class Members was to serve the customers of Amazon and the screening was necessary to ensure that Plaintiff and the Class Members could safely provide that service to Amazon's customers.

33. The COVID-19 examinations were necessary to ensure that the virus did not infect the Amazon facilities or customers. The examinations were also necessary to ensure that the virus did not disrupt the work performed by Plaintiff and the Class Members or affect the business operations of Amazon. If Amazon did not have the COVID-19 screening, workers could inadvertently or unintentionally bring the virus into the Amazon facilities causing a mass breakout of the virus infecting hundreds to thousands of other workers of Amazon. Plaintiff and the Class Members could not perform their work for Amazon if there was a mass breakout of the virus at the Amazon facilities. Furthermore, the COVID-19 virus directly affects the health of workers. If Plaintiff and the Class Members became infected with the virus, their health would suffer. Symptoms of the virus include fatigue, lack of strength, coughing, headaches, and other symptoms. Plaintiff and the Class Members could not perform their work for Amazon if they were infected with the virus.

34. Moreover, the COVID-19 screenings were necessary to the principal activity and primary job duty performed by Plaintiff and the Class Members, which was to serve and assist Amazon customers receiving their purchased items. The COVID-19 screenings were necessary for Plaintiff and Class Members to perform their primary job duty for Amazon. If Amazon cancelled the COVID-19 screenings, the Amazon facilities could get contaminated with the virus, the items that Amazon sold could get contaminated with the virus, the customers could get infected, and other employees of Amazon could get infected. In that event, Amazon's business would be disrupted, and Plaintiff and Class Members would not be able to do their work. Therefore, the COVID-19 screenings were necessary to ensure that Plaintiff and Class Members could do their jobs for Amazon.

35. The COVID-19 screenings were also necessary to the principal activity and primary job duty performed by Plaintiff and the Class Members because the COVID-19 screenings were necessary to ensure that Amazon workers could perform their work safely, to prevent contamination from the virus, and to keep the customers of Amazon safe. If employees became infected with the virus, they would not be able to provide their services to Amazon. Moreover, if Amazon customers received packages that were infected with the virus, the customers would likely no longer use Amazon's services.

36. Thus, the COVID-19 screenings were necessary for the Plaintiff and Class Members to do their work for Amazon and without the screenings, their ability to do their jobs would have been compromised. Plaintiff and the Class Members could not skip the screenings altogether without the safety or effectiveness of their principal activities being substantially impaired. The screenings prevented the COVID-19 virus from spreading through Amazon's facilities and infecting employees and products, thereby allowing Amazon employees to continue

to work.

37. Under these facts, the COVID-19 screenings were also for the benefit of Amazon and its customers. The COVID-19 screenings allowed Amazon's operations to continue and therefore, allowed Amazon to earn a profit. Similarly, the COVID-19 screenings benefited Amazon's customers by allowing them to receive products in a timely basis and to receive products that were not contaminated. Indeed, the COVID-19 screenings were conducted by Amazon with the intent for Amazon to benefit, to earn more profits, and to continue its business. In fact, Amazon's business substantially grew during the pandemic and it appears that the pandemic provided a windfall for Amazon's operations.

38. The COVID-19 screenings were also primarily for the benefit of Amazon because Amazon's COVID-19 screening policy was intended to keep its fulfillment centers and distribution centers as safe of a workplace as possible given the circumstances of the global pandemic. Amazon's COVID-19 screening policy was also intended to ensure the safety of Amazon's workers and to ensure that Amazon complied with the law. By making the workplace safe, Amazon increased the efficiency of Amazon's operations and allowed it to make billions in profits during the pandemic. Indeed, having business operations continue without interruption undoubtedly increased the profits of Amazon. Similarly, complying with all laws ensured Amazon could continue to operate and earn profits. Moreover, having employees who are healthy and able to perform their work ensures that Amazon can continue to operate and earn profits.

39. The COVID-19 screenings were to ensure that the virus did not disrupt the work performed by the Plaintiff/Class Members or affect the business operations of Amazon. If Amazon facilities suffered an infection outbreak, Amazon would potentially have to find new

employees or shut down its warehouses until it was safe to open again. Such an outbreak would harm Amazon directly and cause it to lose significant profits. Given this substantial risk to Amazon's business operations, Amazon primarily benefitted from the COVID-19 screenings.

40. Under Pennsylvania law, the time spent undergoing the COVID-19 screenings is compensable and should have been paid by Amazon. *See Heimbach v. Amazon.com, Inc.*, 43 EAP 2019 (Pa. July 21, 2021).

41. In light of Amazon's conduct, Plaintiff and Class Members are owed significant unpaid wages and penalties.

42. Plaintiff and Class Members are and were non-exempt employees.

43. Plaintiff and Class Members are paid on an hourly rate basis.

44. When they work more than forty (40) hours in a workweek, they are entitled to overtime pay.

45. Although Amazon employs electronic "clocking-in" technology, this technology was not made accessible to Plaintiff and Class Members before the COVID-19 screenings.

46. As a result of Amazon's company-wide policies, Plaintiff and Class Members were not paid for all time worked each day and are owed significant unpaid wages.

47. Amazon's method of paying Plaintiff and Class Members in violation of Pennsylvania law was not based on a good faith and reasonable belief that their conduct complied with the law. Amazon knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

## V. CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class, which is comprised of:

> **All current and former hourly paid employees of Amazon who underwent a COVID-19 screening in Pennsylvania in the three-year period before the filing of the Original Complaint to final resolution of this Action.**

49. <u>Numerosity</u>: The number of members in the Class is believed to exceed forty (40) and in fact, is likely to be in the thousands. This volume makes bringing the claims of each individual member of the Class before this Court impracticable. Likewise, joining each individual member of the Class as a plaintiff in this action is impracticable. Furthermore, the identity of the members of the Class will be determined from Amazon's records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Class Members and Amazon.

50. <u>Typicality</u>: Plaintiff's claims are typical of the Class Members' claims because like the members of the Class, Plaintiff were subject to Amazon's uniform policies and practices and were compensated in the same manner as others in the Class. Amazon failed to pay the Class Members for all hours they worked. Additionally, members of the Class worked substantially more than forty (40) hours in a week as non-exempt employees. Accordingly, Plaintiff and the Class Members have been uncompensated and/or under-compensated as a result of Amazon's common policies and practices which failed to comply with Pennsylvania law. As such, Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and all members of the Class sustained damages arising out of and caused by Amazon's common course of conduct in violation of law as alleged herein.

51. <u>Adequacy</u>: Plaintiff is a representative party who will fairly and adequately protect the interests of the Class Members because it is in their interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Pennsylvania

law. Plaintiff has retained attorneys who are competent in both class actions and wage-and-hour litigation. Plaintiff does not have any interest which may be contrary to or in conflict with the claims of the Class Members he seeks to represent.

52. <u>Commonality</u>: Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact and law include, but are not limited to:

   a. Whether Plaintiff and the Class Members are entitled to compensation for the time spent in the COVID-19 screenings;

   b. The amount of time spent in the COVID-19 screenings;

   c. Whether Plaintiff and the Class Members worked more than forty (40) hours in a workweek;

   d. Whether Amazon failed to pay Plaintiff and the Class Members wages for all hours worked, including overtime hours; and

   e. The proper measure of damages sustained by Plaintiff and the Class Members.

53. <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Class could afford to pursue individual litigation against a company the size of Amazon, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Amazon.

54. A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum,

judicial economy and parity among the claims of individual Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Class Members by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identity of the members of the Class is readily identifiable from Amazon's records.

55. This type of case is well-suited for class action treatment because: (1) Amazon's practices, policies, and/or procedures were uniform; (2) the burden is on Amazon to prove it properly compensated its employees including any potential exemptions that might apply; and (3) the burden is on Amazon to accurately record hours worked by employees. Ultimately, a class action is a superior form to resolve the Pennsylvania claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Amazon to pay Plaintiff and the Class per applicable Pennsylvania laws.

## VI. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

56. All previous paragraphs are incorporated as though fully set forth herein.

57. The PMWA entitles employees to compensation for "all hours worked" in a workweek. *See* 43 P.S. § 333.104(a).

58. During all relevant times, Plaintiff and the Class Members were covered employees entitled to the above-described PMWA protections.

59. Plaintiff and the Class Members are not exempt from the PMWA.

60. Amazon has violated the PMWA by failing to pay Plaintiff and the Class Members for all time associated with the mandatory COVID-19 screenings. *See Heimbach v. Amazon.com, Inc.*, 43 EAP 2019 (Pa. July 21, 2021).

## SECOND CLAIM FOR RELIEF

61. All previous paragraphs are incorporated as though fully set forth herein.

62. The PMWA requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek. *See* 43 P.S. § 333.104(c).

63. During all relevant times, Plaintiff and the Class Members were covered employees entitled to the above-described PMWA protections and worked more than 40 hours in a workweek.

64. Plaintiff and the Class Members are not exempt from the PMWA.

65. Amazon has violated the PMWA by failing to pay Plaintiff and the Class Members for all time associated with the mandatory COVID-19 screenings. *See Heimbach v. Amazon.com, Inc.*, 43 EAP 2019 (Pa. July 21, 2021)..

## VII. JURY DEMAND

66. Plaintiff hereby demands a trial by jury on all issues.

## VIII. PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all Class Members, pray that the Court:

1. Certify that this action may proceed as a class action under Fed. R. Civ. P. 23;

2. Appoint Plaintiff as Representative of the Class, and appoint their counsel as Class Counsel;

3. Find and declare that Amazon's policies and/or practices described above violate Pennsylvania law;

4. Award all unpaid wages, unpaid overtime, liquidated damages, penalties, interest, and/or restitution to be paid by Amazon for the causes of action alleged herein;

5.  Award costs, and expenses, including reasonable attorneys' fees and expert fees;

6.  Award pre-judgment and post-judgment interest, as provided by law; and

7.  Order such other and further legal and equitable relief the Court deems just, necessary and proper.

Date: July 19, 2023                           Respectfully submitted,


*/s/ Matthew S. Parmet*
**Matthew S. Parmet**
PA Bar # 331609
**PARMET PC**
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone  713 999 5228
matt@parmet.law

AND

**Don J. Foty**
(will apply for admission *pro hac vice*)
**HODGES & FOTY, LLP**
2 Greenway Plaza, Suite 250
Houston, Texas 77046
Telephone:    713.523.0001
Facsimile:     713.523.1116
dfoty@hftrialfirm.com