**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RENEE CONNELLY, on Behalf of Herself and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES, LLC,<br><br>Defendant. | Civil Action No. 5:23-cv-2768-JMG |

**REPLY IN SUPPORT OF**
**DEFENDANT'S RULE 56 MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Plaintiff admits Amazon is entitled to judgment on the First Claim. ........ 2

B. Plaintiff's First and Second Claims fail because Plaintiff used the A-to-Z app to clock in before passing through COVID-19 screening. ........ 3

C. Amazon is entitled to judgment on the Second Claim, for PMWA overtime wages, because the COVID-19 screenings were not "required by the employer." ........ 4

D. Amazon is entitled to judgment on the Third Claim for breach of contract because Amazon never contracted with Plaintiff to pay her for COVID-19 screening time. ........ 8

E. Amazon is entitled to judgment on the Fourth and Fifth Claims for quantum meruit and unjust enrichment because Plaintiff cannot carry her burden to show "unconscionability" where the evidence establishes that she benefitted from the government-mandated COVID-19 screenings, as did the public at large. ........ 11

IV. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. IBP, Inc.*,
339 F.3d 894 (9th Cir. 2003) ....................7, 8

*In re Amazon.com, Inc.*,
255 A.3d 191 (Pa. 2021) ....................1, 4, 5, 7

*Argue v. Triton Digital Inc.*,
734 F. App'x 148 (3d Cir. 2018) ....................13

*Bonilla v. Baker Concrete Const., Inc.*,
487 F.3d 1340 (11th Cir. 2007) ....................5, 6, 7

*Boone v. Amazon.com Services, LLC*,
562 F. Supp. 3d 1103 (E.D. Cal. 2022)....................6, 7, 12

*Capp, Inc. v. Dickson/Unigage, Inc.*,
No. CIV.A. 03-5046, 2004 WL 1849893 (E.D. Pa. Aug. 18, 2004) ....................14, 15

*Cazares v. Host Int'l, Inc.*,
No. 20-55803, 2021 WL 3667227 (9th Cir. 2021) ....................5, 7

*De Asencio v. Tyson Foods, Inc.*,
500 F.3d 361 (3d Cir. 2007)....................15

*Gorman v. Consol. Edison Corp.*,
488 F.3d 586 (2d Cir. 2007)....................7

*Haro v. Walmart, Inc.*,
No. 1:21-cv-00239, 2023 WL 2239333 (E.D. Cal. Feb. 27, 2023) ....................12

*Hickey v. Univ. of Pittsburgh*,
81 F.4th 301 (3d Cir. 2023) ....................12

*Irving v. Chester Water Auth.*,
439 F. App'x 125 (3d Cir. 2011) ....................4

*Jackson v. Centennial Sch. Dist.*,
501 A.2d 218 (Pa. 1985)....................15

*Johnson v. Amazon.com Services, LLC*,
No. 23-cv-685, 2023 WL 8475658 (N.D. Ill. Dec. 7, 2023)....................12

*Lugo v. Farmers Pride, Inc.*,
967 A.2d 963 (2009)....................8, 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Malloy v. Amazon.com Services, LLC*,
No. 2:22-CV-00286-ART-MDC, 2024 WL 3276274 (D. Nev. July 1, 2024) ........................12

*Masterson v. Fed. Exp. Corp.*,
No. 07-CV-2241, 2008 WL 4415700 (M.D. Pa. Sept. 26, 2008) .....................................10, 11

*McCowan v. City of Philadelphia*,
603 F. Supp. 3d 171 (E.D. Pa. 2022) ..........................................................................3

*Morillion v. Royal Packing Co.*,
22 Cal. 4th 575 (2000) ..............................................................................................6

*NewSpring Mezzanine Capital II, L.P. v. Hayes*,
No. CV 14-1706, 2016 WL 7426122 (E.D. Pa. Dec. 23, 2016) .......................................14, 15

*Nicholas v. Hofman*,
158 A.3d 675 (Pa. Super. 2017)..................................................................................10

*Perez v. Walmart, Inc.*,
No. 21-cv-120, 2021 WL 5741484 (W.D. Mo. Oct. 25, 2021) ..............................................12

*Steiner v. Mitchell*,
350 U.S. 247 (1956)..............................................................................................7, 15

**Statutes**

34 Pa. Code § 231.1 .............................................................................................. *passim*

Cal. Code Regs., tit. 8, § 11070, 4(B) ..........................................................................6

**Rules**

Fed. R. Civ. P. 12(b)(6).............................................................................................10

Fed. R. Civ. P. 30(b)(6)...............................................................................................9

## I. INTRODUCTION

Plaintiff's response confirms that there are no triable fact issues and Amazon is entitled to summary judgment. No statute, contract, or equitable principle required Amazon to compensate Plaintiff for time spent in government-mandated COVID-19 screenings that protected her health and ability to earn a living, and the health of the general public during an unprecedented pandemic.

First, Plaintiff does not contest that Amazon is entitled to summary judgment on the First Claim of the Second Amended Complaint ("SAC"). The Pennsylvania Minimum Wage Act ("PMWA") does not permit claims for "straight time" where the employer paid more than minimum wage for all hours worked. Mot. at 11. So at a minimum, the Court should enter summary judgment for Amazon against Plaintiff's First Claim.

Second, Plaintiff does not dispute that the Pennsylvania Department of Health mandated COVID-19 screenings. Nor does she claim that the screenings constitute "hours worked" under Pennsylvania law under the second, third, and fourth prongs of the Pennsylvania Supreme Court's definition of compensable time. *See In re Amazon.com, Inc.*, ("*Heimbach*"), 255 A.3d 191, 203 (Pa. 2021). She relies solely on the first prong, claiming that "Amazon must pay for the time spent in COVID-19 screenings because (1) the screenings were required by Amazon, and (2) the screenings were conducted on the premises of Amazon." Opp. at 3. But the COVID-19 screenings were not "required by Amazon." They were required by the Commonwealth, and that mandate bore no relation to how Plaintiff performed her job and everything to do with protecting the safety of her and the public at large.

Third, as to her contract claim, Plaintiff acknowledges that her offer letters state that "salary will be $[15.00/15.25] per hour." She points to no evidence that the regulatory phrase "hours worked" appears in the offer letters or was otherwise a contractual term to which the parties

mutually assented. The contract contains no regulatory term of art and no terms in the offer letter state Amazon would pay Plaintiff for time in the government-mandated COVID-19 screenings. Amazon is, thus, entitled to summary judgment on the Third Claim because there was no breach of the parties' contracts.

Fourth, as to her equitable claims, Plaintiff does not dispute that the evidence, and her own admissions, show that she and society at large benefited from the government-mandated COVID-19 screenings. Plaintiff's contention that Amazon was the alleged "primary" beneficiary of the COVID-19 screenings is wrong (it was not), but also of no consequence under the law. In these circumstances, there was nothing unjust about Amazon—an "essential business" serving the needs of a society in crisis—receiving a benefit Plaintiff allegedly bestowed on it by undergoing the COVID-19 screenings. Plaintiff has not produced any evidence showing that it was unconscionable for Amazon to retain that benefit where it was mutual, and Plaintiff admitted it was for her own protection. No claim lies in equity here and the Court should grant summary judgment against Plaintiff's Fourth and Fifth Claims.

## II. ARGUMENT

### A. Plaintiff admits Amazon is entitled to judgment on the First Claim.

Plaintiff seeks "compensation for 'all hours worked' in a workweek" under the PMWA (the First Claim), separate and apart from her claim for overtime (the Second Claim). *Compare* SAC ¶¶ 64-68, *with id.* ¶¶ 69-73. Amazon explained that this "straight time" claim fails because Plaintiff cannot recover additional non-overtime wages under the PMWA for workweeks under 40 hours when Amazon paid her over twice the required minimum wage (at least $15 compared to $7.25 per hour) even accounting for time in COVID-19 screening. Mot. at 14-15. Plaintiff does not dispute this. Instead, she claims she only "seeks overtime wages under the PMWA" (Second Claim) and that her claim for any "unpaid wages in the weeks when she worked less than 40 hours"

is being sought "under the common law of Pennsylvania, not the PMWA" (Third, Fourth and Fifth Claim). Opp. at 11. Because it is clear that Plaintiff has abandoned the First Claim, Amazon is entitled to summary judgment on that claim.[1] *See, e.g.*, *McCowan v. City of Philadelphia*, 603 F. Supp. 3d 171, 193 (E.D. Pa. 2022) ("when a plaintiff fails to raise an argument in opposition to a motion for summary judgment, it is waived.").

### B. Plaintiff's First and Second Claims fail because Plaintiff used the A-to-Z app to clock in before passing through COVID-19 screening.

Plaintiff's First and Second Claims pose additional problems beyond her inability to show a minimum wage or overtime violation, because Plaintiff's usage of the A-to-Z app showed she often used it before entering the building—as detailed in the Nickerson Report (Ex. P)—and, thus, these claims cannot survive for the weeks Amazon already paid Plaintiff for this time. Mot. at 15. At a minimum, Amazon is entitled to summary judgment on Plaintiff's First and Second Claims for all shifts in which Plaintiff used the A-to-Z app to clock in before passing through screening.

Plaintiff's attempts to avoid this reality and challenge the Nickerson Report fall flat.[2] First, per Chris Howard's Declaration, Ex. D at ¶¶ 4-7, the few instances where Plaintiff's time entries were manually submitted or adjusted via a physical computer were not germane to Nickerson's clock-in-vs.-swipe-in analysis because they were either between April and June 2020 when Plaintiff did not swipe a badge to enter the facility (*see* DEF-0078 to 0081; Pltf. Appx. 000145 at 128:10-16) or were instances where Plaintiff failed to clock *out*, either at the end of a shift or after a meal break (*see* DEF-0088 to 0089; 0112; 0122)—not at the beginning of a shift when screening took place. Second, in many instances Plaintiff clocked in *more* than one minute before swiping

[1] Because Plaintiff has no standing to assert a minimum wage violation under the PMWA, the Court also cannot certify a class that seeks relief for minimum wage violations.

[2] Plaintiff's objection that the Nickerson Report is not proper summary judgment evidence has been resolved by Amazon's motion to supplement its Appendix with Nickerson's sworn declaration affirming the Report's contents, which the Court granted. *See* ECF 65, 66.

in, which cannot be attributed to nearest-minute rounding (*see* Ex. P, DEF-0256 to 0258); nor can Plaintiff rely on her testimony (of having not clocked in before swiping in) to create a dispute of fact where, as here, the evidence indisputably contradicts her self-serving testimony. *See Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011) (holding that "self-serving deposition testimony is insufficient to raise a genuine issue of material fact" when other record evidence rebuts that testimony). Third, Plaintiff's argument that she "is entitled to her unpaid wages during the 12 weeks when" she clocked in after entering the facility is clearly a straight time (not overtime) claim—exactly the type of claim she concedes she is not asserting in her First Claim. Thus, Plaintiff effectively is claiming an entitlement to pay (whether it is minimum wage, straight time, or overtime) for time Amazon already paid her.

### C. Amazon is entitled to judgment on the Second Claim, for PMWA overtime wages, because the COVID-19 screenings were not "required by the employer."

The undisputed facts show that the Pennsylvania DOH Order mandated that Amazon implement the COVID-19 screening. Plaintiff does not dispute that the COVID-19 screening process was required under Pennsylvania law, that the COVID-19 screening process was implemented in accordance with the government regulations, and that it wound down once the government order was lifted. *See* Mot. at 11-12.

Instead, Plaintiff argues *Heimbach* resolves this issue in her favor. Opp. at 2-3, 6. Not so. *Heimbach* never addressed the question of whether an activity was "required by the employer," and instead "presume[d] that these [post-shift security] screenings were required of all employees . . .," and the Sixth Circuit's certified question presumed that Amazon required the time. *Heimbach*, 255 A.3d at 194 n.4, 204. Accordingly, *Heimbach* does not address how to interpret the phrase "required by the employer," particularly when the employer is implementing a government edict.

Plaintiff seemingly concedes that the only prong of 34 Pa. Code § 231.1 under which

COVID-19 screening time could possibly be compensable is "time during which an employee is required by the employer to be on the premises of the employer," but she argues that this time is compensable because the "required screenings were conducted on the premises of Amazon immediately after an employee entered the Amazon site." Opp. 4-5.[3] This argument ignores the relevant question: Is an on-premises activity "required by the employer" when it occurs only when a government mandates it as a condition to operate and for the employee to work? Nothing in *Heimbach* supports interpreting Section 231.1 that broadly. The Court should not read words into the regulation that are not present to include "time during which an employee is required ***by the [government]*** to be on the premises of the employer." The Pennsylvania government, not Amazon, mandated the COVID-19 screenings. *See* DOH Order at 3 (requiring businesses to "implement temperature screening ***before*** an employee enters the business, ***prior to the start of each shift*** or, for employees who do not work shifts, ***before the employee starts work***") (emphasis added).

The reasoning of *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340 (11th Cir. 2007), is instructive. There, the employer "had no discretion as to whether its employees would be screened" because the employees worked at an airport. *Id.* at 1344; *see also Cazares v. Host Int'l, Inc.*, No. 20-55803, 2021 WL 3667227, at *1 (9th Cir. 2021) (finding mandatory airport security screening not compensable under California wage law). Plaintiff dismisses *Bonilla* because it applied a three-factor test that no longer governs under federal law. Opp. at 8. But the first factor was "whether the activity is required by the employer," which is the key question under Pennsylvania law here, and the Eleventh Circuit easily concluded that the airport screening at issue

[3] Plaintiff makes no argument for applying any of the other three Section 231.1 prongs: "[time during which an employee is required by the employer] to be on duty or to be at the prescribed work place"; "time spent in traveling as part of the duties of the employee during normal working hours"; "and time during which an employee is employed or permitted to work." *See* Opp. at 2-9.

was "required by the FAA." *Bonilla*, 487 F.3d at 1344.

The same conclusion applies here. As the Eleventh Circuit aptly observed: "[i]f mere causal necessity was sufficient to constitute a compensable activity, all commuting would be compensable because it is a practical necessity for all workers to travel from their homes to their jobs." *Id.* Similarly, Plaintiff's position would create absurd results that Pennsylvania lawmakers could not have intended. No one understands time walking across a parking lot, driving down a long driveway or entryway, or riding in an elevator to be compensable even though it is time necessarily spent on the employer's premises to get to the worksite. This regulatory phrase must mean what it says: that it is "time during which an employee ***is required by the employer*** to be on the premises of the employer."

Plaintiff cites *Boone v. Amazon.com Services, LLC*, 562 F. Supp. 3d 1103 (E.D. Cal. 2022), to argue otherwise. But in *Boone* the relevant wage laws and regulatory framework were materially different than those present here. In contrast to Pennsylvania, California regulatory guidance expressly "stat[ed] that employers must compensate their employees for time spent in COVID-19 screenings" even if done pursuant to state and local mandates. *Id.* at 1112. Further, the California definition of "hours worked" applied in *Boone* is focused on whether an employee was under "the control of an employer," not whether the activity was "required by the employer."[4] *Id.* at 1113; *see also* Cal. Code Regs., tit. 8, § 11070, 4(B) (defining "hours worked" as "the time during which an employee is subject to the control of an employer . . ."). But Pennsylvania's definition of "hours worked," does not include the term "employer control." It focuses solely on whether the employer

[4] The California Industrial Welfare Commission amended its definition of "hours worked" in 1947—the same year Congress enacted the Portal-to-Portal Act—to add "time during which an employee is subject to the control of an employer," thus expanding California's definition of "hours worked" beyond the FLSA's. *See Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 591-92 (2000).

required the activity. In short, the general wage laws and the specific COVID-19 regulatory framework were materially different in California and Pennsylvania, rendering *Boone* inapposite.

Further, as to the *Boone* court's analysis of the FLSA claim, the court acknowledged that, generally, activities like "checking in and out and waiting in line to do so, changing clothes, washing up or showering, and waiting in line to receive pay checks" are not compensable. However, instead of addressing cases like *Bonilla*, *Cazares*, and *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 593-94 (2d Cir. 2007)—which Amazon cited in its motion here—the *Boone* court incorrectly found *Steiner v. Mitchell*, 350 U.S. 247 (1956), the proper comparator. But in *Steiner* the exposure to lethal substances was inherent to the job at the battery plant, and the activity in question was intended to create a safe manufacturing operation and was not one adopted to protect society writ large. Here, by contrast, there was nothing inherent to the Amazon workplace conditions that created or caused COVID-19—it existed by virtue of conditions external to Amazon's work (namely, a worldwide pandemic). Indeed, the DOH specifically imposed temperature screening as a "disease control measure" "based upon the manner of COVID-19's continued and extensive spread in the Commonwealth and in the world, and its danger to Pennsylvanians," with "[s]pecial consideration [] required to protect ... the workers needed to run and operate these [life-sustaining] establishments." Ex. M, DEF-0230. Moreover, *Boone* and *Steiner* were FLSA cases analyzing whether something was "integral and indispensable" to the primary work activities under the Portal-to-Portal Act, which *Heimbach* held does not govern interpretation of the PMWA. Neither *Boone* nor *Steiner* was a PMWA case asking who mandated the COVID-19 screenings—the employer or the government?[5]

---

[5]Similarly, Plaintiff's invocation of *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003), is also off-point. *Alvarez* was a Portal-to-Portal Act case that involved the donning and doffing of "job-related protective gear." But nothing about undergoing the COVID-19 screening had anything to do with

The Pennsylvania government mandated these COVID-19 screenings because Amazon was an essential business[6] that needed to remain open to serve the communities' needs and Amazon kept the screenings in place only for the duration of the government mandate. Under these circumstances, the phrase "required by the employer" in Section 231.1 cannot be fairly interpreted to make the COVID-19 screenings compensable under the PMWA. Amazon is entitled to summary judgment on the Second Claim.

**D. Amazon is entitled to judgment on the Third Claim for breach of contract because Amazon never contracted with Plaintiff to pay her for COVID-19 screening time.**

Amazon is entitled to summary judgment on Plaintiff's contract claim because Amazon never contracted with Plaintiff (or anyone else) to pay for COVID-19 screenings and the words Plaintiff claims created a contract are nowhere found in her offer letters. Amazon did not promise to pay for "all hours worked." The parties instead agreed that Plaintiff's "salary will be $[15.00/15.25] per hour." Exs. E, F at DEF-0124, 0127.

For this reason, Plaintiff's reliance on *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963 (2009) is misplaced. In *Lugo*, the employees sufficiently alleged—albeit at the lenient preliminary objections stage—that the employer promised "that they would be paid for all hours worked." *Id.* at 965. So for the purpose of addressing the defendant's preliminary objections, the court assumed that the contract at issue invoked the regulatory phrase, "hours worked." *See id.* at 965, 969. Here, by contrast, discovery established that the offer letters upon which Plaintiff bases her contract claim do not contain the phrase "hours worked." So putting aside whether the *Lugo* decision was

whether Plaintiff could perform her ordinary work tasks at the delivery stations—unlike in *Alvarez*, where the slaughterhouse employees could not perform such work safely without protective gear and sanitary measures.

[6] Plaintiff's discussion of any alleged profits Amazon earned in this timeframe is divorced from the essential nature of Amazon's business and the increased demand for Amazon's services during COVID-19. Amazon was only operating, and Plaintiff was only able to work for Amazon, because state governments deemed Amazon and Plaintiff's work essential during the pandemic.

correct, it was based on allegations materially and dispositively different from the record here. *See id.* at 969. Here, even if "per hour" in the offer letter was read as "per hour of work," that still does not invoke Section 231.1's phrase "hours worked" or signify an agreement to pay for any time deemed to fall within Section 231.1's ambit. As a matter of contract law, the parties were free to contract for what was compensable, which could be narrower or broader than might qualify as compensable under the law. If Plaintiff believed she contracted for lower compensation than that to which the PMWA entitled her, her remedy would lie with a PMWA claim and not a breach of contract claim. But since her PMWA claim for straight time wages is not cognizable under Pennsylvania law, she is trying to reframe her non-cognizable claim into an equally deficient breach of contract theory. This Court should not allow her to do so.

There is also no basis for Plaintiff to rewrite the parties' actual agreement to read in a regulatory term of art that nowhere appears. And even if this Court read into the offer letter language not found there, there is no evidence that Amazon ever believed that the PMWA required it to compensate Plaintiff for COVID-19 screening time and, certainly, no such evidence that it did so when it extended the offer letter to Plaintiff.

Nor is there any evidence that Amazon had any alternate understanding of the term. Plaintiff cites Christopher Howard's testimony on this point, but the testimony Plaintiff cites was given by Mr. Howard in his individual capacity only, as the questions asked sought legal conclusions and went beyond Mr. Howard's designated Rule 30(b)(6) topics. *See* Howard Tr. 89:18-21 ("Object to the extent it calls for a legal conclusion, goes beyond the scope of Mr. Howard's topics. You can respond in your individual capacity."); 90:1-2 ("Same objection. You can answer in your individual capacity."); *see also id.* 88:5 to 89:3, 91:8-21, 92:19-93:6. A 30(b)(6) witness binds the corporation only as to topics noticed for deposition. *See Russo v. Aerojet*

*Rocketdyne*, Inc., No. CV 18-3024, 2020 WL 4530703, at *6 (E.D. Pa. Aug. 6, 2020). Mr. Howard also did not author the offer letter. This is not valid evidence as to how Amazon understood the terms of the offer letter.

The evidence shows the parties mutually assented to the term that Plaintiff's "salary will be $[15.00/15.25] per hour." Exs. E, F at DEF-0124, 0127. Plaintiff attempts to rewrite the offer letters. While Amazon agrees there was mutual assent when "it sent Plaintiff letters offering to pay her a set hourly rate for her work for Amazon" and when "Plaintiff responded by accepting the offers and signed the letters confirming her acceptance," Opp. at 14, that mutual assent was over the statement: "Your salary will be $[15.00/15.25] per hour . . . payable weekly in accordance with the Company's standard payroll practice and subject to applicable withholding taxes." Exs. E, F at DEF-0124, 0127. There was no mutual assent to pay for COVID-19 screenings regardless of whether they qualify as "hours worked" under Section 231.1.

For this reason, the statements in *Nicholas v. Hofman*, 158 A.3d 675 (Pa. Super. 2017), upon which Plaintiff relies, that "a court is constrained to construe the parties' contract based on the parties' outward and objective actions—particularly, the plain terms of their written agreement" and "a subjective, or 'true and actual,' meeting of the minds is not necessary for an enforceable contract to form," fully support Amazon's position. *Id.* at 693. It is Plaintiff who is trying to alter the objective meaning of the terms to which she and Amazon mutually assented without a legal or factual basis to do so.[7]

The facts here also are distinguishable from another case cited by Plaintiff, *Masterson*, for this same reason and others. In *Masterson*, a case involving a Rule 12(b)(6) motion, FedEx

[7] Should the parties' subjective beliefs become relevant, Plaintiff does not dispute Amazon's contention that in April 2020 it had no basis to believe that the PMWA imposed any obligation to compensate employees for any preliminary or postliminary screening activity. Mot. at 16-17.

employees used a manual time punch system, but that system was not tied to their pay; instead, a computer system paid employees based on when they typed the first and last task code for the day into the system. *Masterson v. Fed. Exp. Corp.*, No. 07-CV-2241, 2008 WL 4415700, at *1 (M.D. Pa. Sept. 26, 2008). The plaintiffs alleged they did work that did not involve entering a computer task code after they manually punched in but before they entered their first task code of the day. The plaintiffs alleged that they had been promised that "they were being paid for all hours worked" and that "all hours worked meant the hours between manually punching in and punching out." *Id.* at *3. They then pointed to an employee handbook which stated that "[i]t is the policy of FedEx Express to compensate employees for all time worked" in support of this understanding they were to be paid in between the manual punches. *Id.* at *1, 4. *Masterson* merely held the claim was "not implausible" at the pleading stage and so could survive a motion to dismiss. *Id.* at *3. It says nothing about interpreting the phrase "all hours worked" to carry the same meaning as the PMWA and instead relies on the employees' alleged understandings that they were being paid between manual punches combined with the handbook as sufficient allegations to overcome early dismissal. But here Plaintiff cannot point to any evidence—be it an agreement, policy, or practice—to support her claim that she or Amazon agreed to a contractual understanding that included the regulatory phrase "all hours worked." Summary judgment should be granted for Amazon on the Third Claim.

**E. Amazon is entitled to judgment on the Fourth and Fifth Claims for quantum meruit and unjust enrichment because Plaintiff cannot carry her burden to show "unconscionability" where the evidence establishes that she benefitted from the government-mandated COVID-19 screenings, as did the public at large.**

Plaintiff admits that she "agrees" that there "is nothing 'unjust' about Amazon's compliance with Pennsylvania state law by requiring COVID-19 screening." Opp. at 17. And she does not dispute that her own testimony and binding judicial admission establish that the COVID-19 screenings protected her health and ability to earn a living during an unprecedented crisis.

Connelly Tr. DEF 0032:20-24. There is no dispute that (1) the government mandated these screenings and (2) they benefited Plaintiff, her co-workers, and society at large. Given the undisputed benefit to Plaintiff of the COVID-19 screenings as a government-mandated condition for her to be permitted to work and earn a living, as well as the undisputed broader benefit to and protection of the public, there is nothing unconscionable about Amazon retaining its benefit from having operated as an essential business. The Court should grant summary judgment for Amazon on the quantum meruit/unjust enrichment claims for the reasons stated in *Perez v. Walmart, Inc.*, No. 21-cv-120, 2021 WL 5741484, at *3 (W.D. Mo. Oct. 25, 2021) and *Johnson v. Amazon.com Services, LLC*, No. 23-cv-685, 2023 WL 8475658, at *3 (N.D. Ill. Dec. 7, 2023). *See also* Mot. at 18-22.

Plaintiff tries to avoid the reasoning of *Perez* and *Johnson* by claiming that what she believes to be unjust is not undergoing the screenings but instead not being paid for the time in the screenings.[8] Quantum meruit/unjust enrichment claims may necessarily contemplate that a plaintiff has bestowed some benefit on the defendant but the legal test is whether "the defendant retain[ed] the benefit under circumstances where it would be inequitable to do so without payment of value." *Hickey v. Univ. of Pittsburgh*, 81 F.4th 301, 316 (3d Cir. 2023) (citing *WFIC, LLC v. LaBarre*, 148 A.3d 812, 819 (Pa. Super. Ct. 2016)). Here, Plaintiff points to no facts where it

---

[8] Amazon is not aware of any unfavorable Pennsylvania decisions addressing COVID-19 screenings claims for equitable relief nor does Plaintiff direct the Court to any despite her insinuation that Amazon was avoiding such cases (at 20)—they are simply the most on-point decisions of which Amazon is aware. Both *Perez* and *Johnson* were cases with a quantum meruit or unjust enrichment claim. On the other hand, it is entirely unclear why Plaintiff cites in her equitable arguments (at 20-21) *Boone*, 562 F. Supp. 3d at 1108-09, *Haro v. Walmart, Inc.*, No. 1:21-cv-00239, 2023 WL 2239333 (E.D. Cal. Feb. 27, 2023), and *Malloy v. Amazon.com Services, LLC*, No. 2:22-CV-00286-ART-MDC, 2024 WL 3276274, at *1 (D. Nev. July 1, 2024). Those decisions do not involve quantum meruit and/or unjust enrichment claims.

would be "'unconscionable' for [Amazon] to retain the benefit [she] conferred." *Argue v. Triton Digital Inc.*, 734 F. App'x 148, 151 (3d Cir. 2018).

Plaintiff's focus on Amazon's profits is a red herring. Opp. at 18-19. That Amazon generated revenue during the COVID-19 pandemic when it maintained its operations to meet the needs of the public is beside the point. Rather, the proper focus is whether Plaintiff bestowed a benefit on Amazon and whether it would be unconscionable in these circumstances not to pay her for that benefit, *i.e.*, her time.

Pennsylvania imposed its requirement to undergo COVID-19 screenings on all ***essential*** businesses—the only businesses even permitted to operate in Pennsylvania at the time—as a condition for operating (and as a condition to employees being allowed to work and earn a living). Plaintiff's argument that without employees undergoing these screenings Amazon could not operate does not establish a benefit bestowed on Amazon, much less one inequitable to retain. Amazon also needs employees to commute to work for it to operate, but that is not a benefit for which equity (or statutory law) require Amazon to provide compensation. So too here, Plaintiff identifies no facts showing she performed any work duties during the COVID-19 screenings or that she could have worked at all without undergoing the screenings. Given Plaintiff agrees it was not unjust to comply with the governmental mandate and her own testimony and admissions show she also received a benefit (she got to work), as did her co-workers and society at large from these screenings, she cannot meet her burden to show any benefit to Amazon that retention of without compensation would be unconscionable.

Nor is there any fact dispute. Opp. at 21-23. There is simply a question of whether Plaintiff has produced any evidence that it is "unconscionable" for Amazon not to pay her for screenings in these circumstances. Plaintiff points to no such evidence. Instead, she argues there is no "bright-

line rule" that a "plaintiff who receives some incidental benefit is automatically barred from asserting a quantum meruit/unjust enrichment claim." Opp. at 21-22.

But that is not Amazon's point. Plaintiff's own testimony shows she received more than an incidental benefit; she received a direct benefit—she was protected and able to work. Connelly Tr. DEF 0032:20-24 (testifying these government-mandated measures were to "protect [Amazon's] employees"). And the benefit also protected her coworkers and society at large. *See* Mot. at 19-20 (citing Plaintiff's binding pleadings that COVID-19 caused death and serious illness and that the screenings were needed to prevent "mass breakout[s]"). It is also undisputed that the government—not Amazon—mandated these screenings and that without undergoing the COVID-19 screening Pennsylvania would not have permitted Plaintiff to work and earn a living. Thus, given these undisputed facts, where these screenings helped keep Plaintiff healthy and earn a living, as well as the broader benefits to society, Amazon has done nothing unjust.

These are materially different circumstances than in *Capp, Inc. v. Dickson/Unigage, Inc.*, No. CIV.A. 03-5046, 2004 WL 1849893, at *4 (E.D. Pa. Aug. 18, 2004), and *NewSpring Mezzanine Capital II, L.P. v. Hayes*, No. CV 14-1706, 2016 WL 7426122, at *3 (E.D. Pa. Dec. 23, 2016).[9] *Dickinson* involved an unjust enrichment counterclaim by the defendant alleging the plaintiff had provided a state government with altered certificates (which were originally provided by the defendant), the defendant provided the state with correct certificates, and as a result of defendant providing the correct certificates the plaintiff kept its state contract. On a motion to dismiss, the court found those pleadings sufficient to state a claim for unjust enrichment, even

[9] It is unclear why Plaintiff cited *Lemons v. Meguerian*, as the court dismissed an unjust enrichment claim there explaining that "[t]he fact that we derive advantage from the efforts and expenditures of others is not 'unjust enrichment' but one of the advantages of civilization." No. CV 21-1737, 2022 WL 6746261, at *4 (E.D. Pa. Oct. 11, 2022) (citing Restatement (Third) of Restitution and Unjust Enrichment § 2 cmt. b)).

where the defendant arguably received some benefit of future business. *Capp*, 2004 WL 1849893, at *4. And in *NewSpring*, it was the plaintiff not the defendant moving for summary judgment claiming the evidence was so overwhelming, but the court determined there where evidentiary issues for the jury around the parties' knowledge and intent that impacted the equitable analysis—issues that do not exist here. 2016 WL 7426122, at *3.

Plaintiff's response to Amazon's argument that the holding in *Jackson v. Centennial School District*, 501 A.2d 218, 220 (Pa. 1985) precludes this Court from looking to the FLSA's meaning in determining what equity requires as to the quantum meruit/unjust enrichment claims is also without merit. Amazon's argument is that to the extent this Court is inclined to look to *Steiner* and *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361 (3d Cir. 2007), which are FLSA cases, Plaintiff's remedy is under the FLSA and not in common law equitable claims. *See* Mot. at 20-21. Nor is Amazon's position that this Court "should not adopt the guidance from the United States Supreme Court or the Third Circuit." Opp. at 19. It is instead that the teachings of those cases are wholly foreign to any inquiry in Pennsylvania common law, especially for equitable claims.

Because it is undisputed there was a mutual benefit and because Plaintiff has produced no evidence that it is unconscionable for Amazon to retain its share of that benefit, summary judgment should be granted for Amazon on the Fourth and Fifth Claims.

## IV. CONCLUSION

For all these reasons and those stated in Amazon's motion, the Court should grant summary judgment for Amazon on all claims.

Dated: December 9, 2024

Respectfully submitted,

s/ Richard G. Rosenblatt
Richard G. Rosenblatt
MORGAN, LEWIS & BOCKIUS LLP
2222 Market St.
Philadelphia, PA 19103-3007
Tel: (215) 963-5000
Fax: (215) 963-5001
richard.rosenblatt@morganlewis.com

Brendan Killen (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Tel: (212) 309-6000
Fax: (212) 309-6001
brendan.killeen@morganlewis.com

Michael E. Kenneally (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 739-3000
Fax: (202) 739-3001
michael.kenneally@morganlewis.com

*Counsel for Defendant*
*Amazon.com Services LLC*