**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| RENEE CONNELLY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:23-cv-02768-JMG |
| | : | |
| AMAZON.COM SERVICES, LLC, | : | |
| Defendant. | : | |

---

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                   **March 4, 2025**

## I.    OVERVIEW

In 2023, Plaintiff Renee Connelly filed this class action suit against her employer, Defendant Amazon.Com Services, LLC (Amazon), alleging claims under the Pennsylvania Minimum Wage Act (PMWA) and claims for breach of contract, unjust enrichment, and quantum meruit. All these claims rely on the same argument: that Amazon implemented a uniform policy requiring its employees to undergo COVID-19 temperature screenings each shift without pay. The Pennsylvania Supreme Court has spoken on this issue: employees must be paid for the time spent in these screenings. So the Class Members now seek their due compensation.

Before the Court are three Motions. Plaintiff moves to certify two classes and two subclasses of Amazon employees under Federal Rule of Civil Procedure 23(a) and (b)(3). Plaintiff also moves to strike one of Amazon's reports as untimely. And Amazon moves for summary judgment, arguing that all Plaintiff's legal claims fail. All three Motions are opposed. For the reasons below, the Motion for Class Certification is granted with a modification, the

Motion to Strike is denied, and the Motion for Summary Judgment is granted in part and denied in part.

## II.    BACKGROUND

### A.  Factual Background

#### 1.  Plaintiff's Amazon Employment

Plaintiff started working as a Seasonal Sortation Associate at Amazon's Langhorne, Pennsylvania delivery station (DEW4) in April 2020. Def.'s Statement of Undisputed Material Facts at ¶ 1.[1] Her signed offer letter set her salary as "$15.00 per hour" and explained that she "will be eligible for overtime pay in accordance with applicable laws." *Id*. at ¶ 2. By signing the letter, Plaintiff agreed that "the terms described in this letter will be the initial terms of your temporary employment, and this letter supersedes any previous discussions or offers." *Id*. at ¶ 3. The letter did not state, nor did anyone tell Plaintiff, that she would be paid for any time spent completing COVID-19 screenings. *Id*. at ¶¶ 4-5.

In November 2020, Plaintiff became a permanent Sortation Associate at the DEW4 facility. *Id*. at ¶ 6. For this new position, Plaintiff signed another offer letter, which increased her salary to "$15.25 per hour" and explained that she "will be eligible for overtime pay in accordance with applicable laws." *Id*. at ¶¶ 6-7. She again agreed that "the terms described in this letter will be the initial terms of your employment, and this letter supersedes any previous discussions or offers." *Id*. at ¶ 8. Like the first letter, the second one did not state that she would be paid for any time spent completing COVID-19 screenings. *Id*. at ¶ 9.

---

[1] Plaintiff did not submit a Statement of Undisputed Material Facts. Because Amazon did file one and Plaintiff cites to it in her own briefing, the Court will rely on it as well.

Three months later, in February 2021, Plaintiff transferred to the delivery station in Bristol, Pennsylvania. *Id*. at ¶ 10. She continued to work as a Sortation Associate there until July 8, 2021. *Id*. During her employment with Amazon, Plaintiff did not discuss with anyone the possibility of being compensated for COVID-19 screenings. *Id*. at ¶ 11.

### 2. COVID-19 and Amazon's Temperature Screening Policy

The outbreak of the COVID-19 disease wrecked the world. Global and national officials responded to the disease by issuing guidance and regulations. For instance, the World Health Organization declared a global pandemic, the Center for Disease Control and Prevention encouraged businesses to implement cleaning measures and keep sick employees home, the United States federal government declared a national emergency and implemented the slow the spread program, which encouraged individuals to work from home unless they were in a "critical infrastructure program," and the Occupational Safety and Health Administration recommended employers to follow safety measures like social distancing. *Id*. at ¶ 13.

State and local officials also took a leading role in the fight against COVID-19. In Pennsylvania, the state's Secretary of the Department of Health ("DOH") issued an Order on "Public Health Safety Measures" that allowed "life-sustaining businesses," including Amazon, to remain open during the COVID-19 pandemic. *Id*. at ¶ 14. The DOH Order also "order[ed] certain actions to be taken by employers and their employees to protect their health and lives, the health and lives of their families, and the health and lives of the residents of the Commonwealth who depend upon their services." *Id*. at ¶ 15.

One of these required measures included temperature screenings. Employers had to "implement temperature screening before an employee enters the business, prior to the start of

each shift . . . and send employees home that have an elevated temperature or fever of 100.4 degrees Fahrenheit or higher." *Id*. at ¶ 16. They also had to "ensure employees practice social distancing while waiting to have temperatures screened." *Id*. at ¶ 17.

In response to these orders, Amazon implemented the temperature screening policy. The company required everyone who entered its facilities—including employees—to undergo temperature screenings. *Id*. at ¶ 18. The screenings happened before employees started each shift and they were sent home if their temperature was elevated. *Id*. At DEW4, Amazon first used a handheld thermometer to do the screenings and then switched to thermal imaging cameras that were placed inside the entrance door. *Id*. at ¶¶ 18-20. While at Amazon, Plaintiff Connelly underwent temperature screenings using both methods. *Id*. at ¶¶ 19-23.

### 3. The Clocking-In Process

The temperature screenings impacted Amazon's clocking-in process. Employees at the company were required to record the time they spent working by clocking in and out at the beginning and end of each shift and for meal breaks. *Id*. at ¶ 24. Physical time clocks were located throughout the facilities for employees to use. *Id*. at ¶ 25.

Amazon did not permit employees to clock in before undergoing temperature screenings. In fact, the company mandated employees to clock in "after" the "thermal screening process." Pl.'s Mot. Class Certification, ECF No. 54, at 4. So employees punched in with the clocks after they finished their screenings. Def.'s Statement of Undisputed Material Facts at ¶ 25.

But the physical clocks were not the only way to clock in. Amazon also allowed employees to clock in and out using a mobile application—the A-to-Z app—instead of the physical time clocks. *Id*. at ¶ 26. Time and badge swipe records show that employees regularly

used this method to punch in. For example, Plaintiff's records show that she clocked in with the app for 186 out of 189 of her shifts at one facility and for 78 out of 87 shifts at another. *Id*. at ¶ 28. Employees also routinely punched in using the app before entering the facility and undergoing the temperature screenings. Def.'s Resp. Mot. Class Certification, ECF No. 60, at 5-6.

### B.  Procedural Background

Plaintiff, a former non-exempt hourly paid Amazon employee, brought this lawsuit on July 19, 2023, against Amazon seeking compensation for time spent in COVID-19 temperature screenings. Amazon did not pay its employees for this time because it did not allow them to clock in until after they finished the screenings. Amazon's failure to pay, according to Plaintiff, violates the PMWA and constitutes a breach of contract, or in the alternative, unjust enrichment and quantum meruit. Pl.'s Mot. Class Certification, ECF No. 54, at 1. After this suit was filed, the parties submitted the following three Motions.

### 1.  Motion for Class Certification

On November 15, 2024, Plaintiff Connelly filed a Motion for Class Certification. She argues that "class certification is appropriate because this case involves a company policy requiring all hourly employe[e]s to perform the same work each shift without pay." *Id*. at 4. Plaintiff seeks class certification of two classes and two subclasses under Federal Rule of Civil Procedure 23(a) and (b)(3):

- **PMWA Class**: All current and former hourly paid employees of Amazon who underwent a COVID-19 screening during at least one week in Pennsylvania in the three-year period before July 19, 2023.

5

- o **Subclass 1**: All current and former hourly paid employees of Amazon who underwent a COVID-19 screening and clocked-in on a physical time clock at an Amazon site during at least one week in Pennsylvania in the three-year period before July 19, 2023.

- **Common Law Class**: All current and former hourly paid employees of Amazon who underwent a COVID-19 screening during at least one week in Pennsylvania when they worked less than 40 hours in the four-year period before July 19, 2023.

  - o **Subclass 1**: All current and former hourly paid employees of Amazon who received a written offer letter from Amazon and who underwent a COVID-19 screening during at least one week in Pennsylvania when they worked less 40 hours in the four-year period before July 19, 2023.

Amazon opposes class certification. *See generally* Def.'s Resp. Mot. Class Certification, ECF No. 60.

### 2.  Motion to Strike

On December 20, 2024, Plaintiff moved to strike Exhibit 1 to Amazon's Response to Plaintiff's Motion for Class Certification, which is an expert report from Peter Nickerson. Plaintiff claims that the Court should strike Exhibit 1 because the information in it was not disclosed on time and was never produced during discovery. Pl.'s Mot. Strike, ECF No. 76, at 1. Amazon also opposes excluding the Nickerson report. *See generally* Def.'s Resp. Mot. Strike, ECF No. 77.

### 3. Motion for Summary Judgment

The same day that Plaintiff filed a Motion for Class Certification, Amazon filed a Motion for Summary Judgment on the individual claims. In the Motion, Amazon argues that all of Plaintiff's claims fail. Amazon provides four reasons why the claims fail: (1) because the temperature screenings do not count as compensable time since they were mandated by the government; (2) because she was paid more than the minimum wage for every hour worked, (3) because her offer letters do not promise compensation for time spent in temperature screenings, and (4) because the temperature screenings benefitted Plaintiff Connelly. *See* Def.'s Mot. Summ. J., ECF No. 53, at 2-4. Plaintiff mostly opposes summary judgment.[2] *See generally* Pl.'s Resp. Mot. Summ. J., ECF No. 61.

### III.    DISCUSSION

Currently before the Court are all three Motions: the Motion for Class Certification, the Motion to Strike, and the Motion for Summary Judgment. The Court will address each Motion in turn, beginning with the Motion for Class Certification.

### A. Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)) (internal quotation marks omitted). To invoke the exception, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id*. at 348-49 (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)) (other citation omitted)

---

[2] As the Court will explain below, there does seem to be one issue that Plaintiff concedes at summary judgment—that she does not bring a straight time claim under the PMWA.

(internal quotation marks omitted). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Id*. at 349.

"[E]very putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012) (citing Fed. R. Civ. P. 23(a)-(b)). To meet Rule 23(a), "(1) the class must be so numerous that joinder of all members is impracticable (numerosity); (2) there must be questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class (typicality); and (4) the named plaintiffs must fairly and adequately protect the interests of the class (adequacy of representation, or simply adequacy)." *Id*. at 590-91 (internal quotation marks and citations omitted).

Because Plaintiff proceeds under Rule 23(b)(3), she must also prove: (1) "that questions of law or fact common to class members predominate over individualized questions, which is commonly called the predominance requirement," and (2) "that the class action device is superior to other methods for resolving the claims, which is often referred to as the superiority requirement." *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 183 (3d Cir. 2019) (internal quotation marks and citation omitted). "Class certification is proper only if the trial court is satisfied, after a rigorous analysis that all of the necessary Rule 23 requirements have been fulfilled." *Id*. (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 350-51) (internal quotation marks omitted).

### 1. The Proposed Classes

As mentioned before, Plaintiff proposes two classes and two subclasses under Federal Rule of Civil Procedure 23(a) and (b)(3). Three of the classes—the PMWA Class, the Common

Law Class, and the Common Law Subclass 1—include "[a]ll current and former hourly paid employees of Amazon who underwent a COVID-19 screening" regardless of how these employees clocked in. The PMWA Subclass 1, on the other hand, is limited to employees who "clocked-in on a physical time clock." The failure of the three proposed classes to differentiate between which method the employees used to clock in prevents class certification under both commonality and predominance. To show this point, the Court begins with what commonality and predominance require.

Rule 23 requires Plaintiff to show "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The key to commonality "is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (emphasis in original).

Predominance "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453, (2016) (citation omitted). The predominance inquiry requires courts to "give careful scrutiny to the relation between common and individual questions in a case. An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member." *Id*. (internal quotation marks omitted).

"The commonality and predominance requirements are closely linked." *Ferreras*, 946 F.3d at 185. The predominance requirement, however, is "far more demanding than the commonality requirement." *Id*. (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008)). Indeed, "where an action is to proceed under Rule 23(b)(3), the commonality requirement is subsumed by the predominance requirement." *Id*. (quoting *Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008)). "If the commonality requirement cannot be met, then the more stringent predominance requirement obviously cannot be met either." *Id*. (citation omitted).

Seven common questions are offered by Plaintiff: "(1) whether the time spent waiting to be screened was compensable under the PMWA; (2) whether the time spent being screen[ed] was compensable under the PMWA; (3) whether the time spent on Amazon's premises after the screening but prior to clocking-in was compensable under the PMWA; (4) whether Amazon entered a contract with each Class Member; (5) whether the form offer letter issued by Amazon expresses the terms of that contract; (6) whether Amazon breached its contract with each Class Member; and (7) whether Amazon was unjustly enriched by not compensating Plaintiff and the Class Members for the time spent in the COVID screenings." Pl.'s Mot. Class Certification, ECF No. 54, at 15. All these questions boil down to one: whether the time spent undergoing COVID-19 temperature screenings is compensable?

Plaintiff claims that the commonality and predominance requirements are satisfied. She begins by arguing that *In re Amazon.com, Inc.*, 667 Pa. 16, 255 A.3d 191 (2021) (*Heimbach*), answers the common question. In that case, the Pennsylvania Supreme Court considered the following question on certification from the United States Court of Appeals for the Sixth Circuit: "whether time spent on an employer's premises waiting to undergo, and undergoing, mandatory

security screenings is compensable as 'hours worked' within the meaning of the [PMWA]." *Id*. at 192. The state supreme court answered that such time was compensable, finding "all 'time during which an employee is required by the employer to be on the premises of the employer' as compensable hours worked, regardless of whether the employee is actually performing job-related duties while on the premises." *Id*. at 204 (citation omitted). Because *Heimbach* establishes that Amazon must pay the Class Members for time spent in COVID-19 screenings, Plaintiff asserts that the only thing left to do is to prove liability and damages through common evidence. To establish liability, she points to Amazon's "company-wide COVID screening policy" that required employees to clock in after finishing their screenings. Pl.'s Mot. Class Certification, ECF No. 54, at 19. To establish damages, she turns to timekeeping data to show how much estimated time employees spent completing the screenings. *Id*. at 25.

But Plaintiff's proposed classes cannot meet commonality and predominance because of a factor she initially ignored—the use of the A-to-Z app. Plaintiff attempts to prove classwide liability by showing that all Class Members were subject to Amazon's COVID-19 temperature screening policy. This argument assumes that the Class Members were not paid for the time spent undergoing the screenings because Amazon required them to clock in with a physical time clock *afterward*. If this assumption is correct, then all Class Members are entitled to be paid for the time spent in the screenings because that time happened off the clock.

That presumption is wrong though. As Amazon points out, Plaintiff and other employees were also able to clock in with the A-to-Z app. Def.'s Resp. Mot. Class Certification, ECF No. 60, at 1. And some of the employees who clocked in with the app did so *before* they passed through the screenings. *Id*. at 5-6. The Court cannot conclude then that the common question— whether time spent completing the screenings is compensable—can "generate common

answers." *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (emphasis in original). After all, even if *Heimbach* requires Amazon to pay employees for the time spent in temperature screenings, the employees who punched in with the app *before* they completed the screenings were already paid for that time. So each Class Member will still have to prove that they were not actually paid for the time they spent going through the screenings and thus are entitled to more compensation than they received. *See Ferreras*, 946 F.3d at 185 ("The plaintiffs will still need to go through the process of proving that each individual employee worked overtime and is thus entitled to additional compensation, regardless of any common evidence about American's timekeeping system."). These individualized liability considerations cut against class certification under Rule 23. *See Vaccaro v. Amazon.com.dedc, LLC*, 2024 WL 4615762, at *11 (D.N.J. Oct. 30, 2024) (citing *Kurihara v. Best Buy Co., Inc.*, 2007 WL 2501698, at *10 (N.D. Cal. Aug. 30, 2007)). "Having failed to show commonality, [Plaintiff] necessarily fail[s] too in [her] effort to show predominance." *See Ferreras*, 946 F.3d at 186.

*Vaccaro v. Amazon.com.dedc, LLC*, 2024 WL 4615762 (D.N.J. Oct. 30, 2024), supports the conclusion that the use of the app prevents Plaintiff from meeting commonality and predominance.[3] In that case, the plaintiffs, who were hourly employees, alleged that Amazon failed to pay overtime wages to them for their time spent undergoing mandatory security screenings after clocking out. *Id*. at *1-3. The court held that the plaintiffs failed to meet commonality and predominance for three reasons: "not all putative class members were subject to a uniform policy that required them to undergo mandatory post-shift security screenings without receiving overtime pay[;] [n]ot all New Jersey facilities consistently implemented security screenings during the class period; and the A-Z App introduced in 2020 has made it

---

[3] Of course, the District of New Jersey's decisions are not binding on courts in the Eastern District of Pennsylvania. But such decisions can still be persuasive.

possible for employees to clock out after security screenings and therefore be compensated accordingly." *Id*. at *10.

The first two reasons—that not all plaintiffs were subject to Amazon's screening policy and that not all Amazon facilities in New Jersey consistently applied the policy—fail to move the needle here because it is undisputed that the Class Members in this case, unlike the ones in *Vaccaro*, were subject to a uniform policy in Pennsylvania facilities that required them to complete COVID-19 temperature screenings before their shifts. Pl.'s Reply Br. in Support of Mot. Class Certification, ECF No. 73, at 2.

But the third reason is spot-on. In *Vaccaro*, the employees were able to use the A-to-Z app to "wait to clock out until *after* they pass[ed] through security screening." *Vaccaro*, 2024 WL 4615762, at *10 (emphasis in original). The court found that this use of the app defeated commonality and predominance since the common evidence of Amazon's timekeeping system "would not allow the Court to determine liability 'for all class members in one fell swoop,' . . . because any employee who used the A-Z App to clock out after proceeding through the post-shift security screening would not be entitled to additional compensation." *Id*. at *11. While the app was used in post-shift screenings in *Vaccaro* and pre-shift screenings here, the outcome is the same—the fact that some employees were paid for undergoing the screenings creates a "question of . . . liability" that destroys commonality and predominance. *Id*.

Plaintiff addresses the app problem for the first time in her reply brief and tries to circumvent it in two ways. First, Plaintiff argues that common evidence of Amazon's timekeeping system "can identify when each employee[] clocked-in before or after the screening." Pl.'s Reply Br. in Support of Mot. Class Certification, ECF No. 73, at 9. Therefore,

according to Plaintiff, "there are no individualized issues because the data shows exactly when each Class Member completed a COVID screening off-the-clock." *Id*. Second, Plaintiff claims that *Vaccaro* is not persuasive because its holding was based on the fact that "not all putative class members were subject to a uniform policy that required them to undergo mandatory post-shift security screening . . . [and] Not all New Jersey facilities consistently implemented security screenings during the class period." *Id*. at 15 (quoting *Vaccaro*, 2024 WL 4615762, at *10).

Both arguments fail. First, it is true that the Nickerson report provides data showing when each employee punched in for their shift and which method they used.[4] Plaintiff believes this report solves the individualized liability problem because it "shows exactly when each Class Member completed a COVID screening off-the-clock." Pl.'s Reply Br. in Support of Mot. Class Certification, ECF No. 73, at 9. But Plaintiff's proposed classes still include Class Members who were paid when they clocked in with the app before passing through the screenings. To prove liability then the Court will have to look at each Class Members' shifts to determine whether their screening on a particular day happened on or off the clock. Although Plaintiff seems to encourage these individualized assessments of liability, such assessments prevent class certification. *See Lutz Surgical Partners PLLC v. Aetna, Inc.*, 2023 WL 2153806, at *5 (D.N.J. Feb. 21, 2023) ("Rule 23(b)(2) is not appropriate where 'significant individual liability or defense issues . . . would require separate hearings for each class member in order to establish defendants' liability.") (quoting *Santiago v. City of Phila.*, 72 F.R.D. 619, 627 (E.D. Pa. 1976)).

Second, Plaintiff is right that the court in *Vaccaro* rejected class certification because there was not a uniform COVID-19 screening policy implemented against all the plaintiffs in the

---

[4] Nickerson identified 2,744,536 shifts with corresponding swipe-ins and in-punches. Of those shifts, Nickerson found that employees clocked in with a physical time clock 65% of the time and with the app for the other 35%.

various Amazon facilities in New Jersey. *See Vaccaro*, 2024 WL 4615762, at \*10. But that was only part of the reasoning. The court also found that "whether the employee was compensated for the screening" raised a "question of . . . liability." *Id*. at \*11. This liability question defeated commonality and predominance "because any employee who used the A-Z App to clock out after proceeding through the post-shift security screening would not be entitled to additional compensation." *Id*. The Court finds that *Vaccaro* is persuasive because the same issue echoes throughout this case. Thus, the proposed classes' inclusion of employees who used the app to clock in raises individualized liability issues that defeat class certification.

### 2.  The Revised Classes

Although the individualized liability problems posed by the app prevent Plaintiff's proposed classes from being certified, there is another avenue for class certification—this Court's inherent authority to redefine the proposed classes. "District courts possess the authority to redefine proposed classes." *See Remick v. City of Philadelphia*, 2022 WL 742707, at \*5 (E.D. Pa. Mar. 11, 2022) (citing *Finberg v. Sullivan*, 634 F.2d 50, 64 n.9 (3d Cir. 1980)) (other citations omitted). "To the extent that some of the claims raised by the plaintiffs truly do require the court to engage in individualized determinations, the court retains the discretion to decertify or modify the class so that the class action encompasses only the issues that are truly common to the class." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 63 (3d Cir. 1994) (citing Fed. R. Civ. P. 23(c)(4)).

Here, by limiting the class to all people who clocked in with a physical time clock, the Court can modify the proposed classes so that the individualized liability issues created by the app are eliminated. Plaintiff seems to have anticipated this modification by proposing a subclass of Amazon employees who underwent the COVID-19 temperature screenings and clocked in

with a physical time clock. The Court will use this more limited definition to reconstruct both of Plaintiff's primary classes. So the definitions of the revised classes are:

- **PMWA Class**: All current and former hourly paid employees of Amazon who underwent a COVID-19 screening and clocked-in on a physical time clock at an Amazon site during at least one week in Pennsylvania in the three-year period before July 19, 2023.

- **Common Law Class**: All current and former hourly paid employees of Amazon who underwent a COVID-19 screening and clocked-in on a physical time clock at an Amazon site during at least one week in Pennsylvania when they worked less than 40 hours in the four-year period before July 19, 2023.

For the reasons laid out below, the revised classes meet the requirements for class certification under Rule 23.

### i.    Numerosity

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A party seeking class certification must "be prepared to prove that there are in fact sufficiently numerous parties," *Wal-Mart Stores, Inc.*, 564 U.S. at 350, and cannot rely on mere speculation with respect to the number of class members. *Marcus*, 687 F.3d at 596. "While [n]o minimum number of plaintiffs is required to maintain a suit as a class action, [the Third Circuit] has said that generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249-50 (3d Cir. 2016) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)) (internal quotation marks omitted).

16

Plaintiff's proposed classes contain over 30,000 individuals. But the revised classes are limited to employees who underwent the screenings and clocked in with a physical time clock. It is not clear whether this modification has reduced the number of Class Members. And if it has, it is unclear by how much. Yet the common evidence shows that employees clocked in with a physical time clock between 65% and 75% of the time. Pl.'s Reply Br. in Support of Mot. Class Certification, ECF No. 73, at 5-6. Even at the low end, that puts the number of Class Members at thousands of individuals—well above the general rule of 40. *See In re Modanfinil*, 837 F.3d at 249-50.

### ii.    Commonality

As discussed above, to satisfy this requirement, Plaintiff must show "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2). "Commonality is satisfied when there are classwide answers." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015) (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 350; *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298-300 (3d Cir. 2011)). This "means that determination of [the common question's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350.

Plaintiff's revised classes meet commonality. The fatal problem for the proposed classes was that the common question—whether the time spent undergoing COVID-19 temperature screenings is compensable—could not generate common answers. Because regardless of the how the Court decided that question, the fact that the Class Members used the app to clock in before the screening during some shifts would require a shift-by-shift analysis to determine how much time was actually compensable. Limiting the classes to employees who clocked in with a physical time clock resolves this issue. Now, the only shifts included in the revised classes are

the ones in which the Class Members clocked in with a physical time clock. Amazon does not dispute that the screenings in all these shifts happened off the clock. *See* Pl.'s Reply Br. in Support of Mot. Class Certification, ECF No. 73, at 5. So a yes or no answer to the common question will allow the Court to determine liability for the entire class "in one stroke," which satisfies commonality. *Wal-Mart Stores, Inc.*, 564 U.S. at 350; *cf. Vaccaro*, 2024 WL 4615762, at *10.

Amazon raises three arguments as to why the revised classes still fail to meet commonality. None of them succeed. First, Amazon claims that limiting the classes to employees who clocked in with a physical time clock creates more hurdles to certification because the Court will not be able to determine which employees are Class Members. Def.'s Resp. Mot. Class Certification, ECF No. 60, at 8. The Third Circuit has explained that "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Carrera v. Bayer Corp.*, 727 F.3d 300, 305 (3d Cir. 2013) (quoting *Marcus*, 687 F.3d at 593). Ascertainability is not a problem here because the common evidence about Amazon's timekeeping system reveals when each Class Member completed an off-the-clock screening by punching in with a physical time clock.[5]

Another reason why Amazon believes that limiting the classes to employees who clocked in with a physical time clock creates more hurdles to certification is that doing so would require the Court "to  offset any unpaid time clocking in at a physical timeclock with any extra (non-compensable) time captured by A-to-Z app clock-ins on other days during the week to determine whether a putative class member exceeded the 40 hour threshold that would trigger overtime

---

[5] Amazon's own report identifies when each employee clocked in with a physical time clock. Def.'s Resp. Mot. Class Certification, ECF No. 60-8, at 4 ("[E]mployees punched in using a physical time clock approximately 65% of the time.").

liability." Def.'s Resp. Mot. Class Certification, ECF No. 60, at 8-9. Offsetting is permitted in certain cases. *See Smiley v. E.I. Dupont De Nemours & Co.*, 839 F.3d 325, 332 (3d Cir. 2016) (explaining that the FLSA "only provides for an offset of an employer's overtime liability using other compensation excluded from the regular rate pursuant to sections 207(e)(5)-(7) and paid to an employee at a premium rate"). But Amazon has not cited any legal authority, and the Court has not found any, that requires the Court to offset under the PMWA. So the Court declines to do so.

Second, Amazon argues that the question of whether the time spent on Amazon's premises after the screening but prior to clocking in was compensable under the PMWA defeats commonality because it cannot generate common answers. Specifically, Amazon claims that Class Members are not automatically entitled to pay for time spent on Amazon's premises after undergoing the screening but before clocking in because—depending on what each Class Member was doing then—that time may be considered time spent on premises for employee convenience, which is not compensable under the PMWA. Def.'s Resp. Mot. Class Certification, ECF No. 60, at 13-14. Plaintiff disagrees, relying on the continuous workday rule. Pl.'s Reply Br. in Support of Mot. Class Certification, ECF No. 73, at 12. Perhaps Amazon is right that this time is not compensable. But "the class certification stage is not the place for a decision on the merits." *Williams v. Jani-King of Philadelphia Inc.*, 837 F.3d 314, 322 (3d Cir. 2016) (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013)). It is enough at this point that the time spent on Amazon's premises after completing the screening but before clocking in may be compensable under the PMWA and that the common evidence captures that time. *See id.*

Third, Amazon claims that the question of whether Amazon breached a contract with each Class Member is also incapable of generating common answers. Under Pennsylvania law, to state a cause of action for breach of contract, a "plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010) (quoting *Hart v. Arnold*, 884 A.2d 316, 332 (Pa. Super. 2005)). "[F]or an agreement to exist, there must be a 'meeting of the minds,' . . . the very essence of an agreement is that the parties mutually assent to the same thing." *Accu-Weather, Inc. v. Thomas Broad. Co.*, 625 A.2d 75, 78 (Pa. Super. 1993) (citation omitted). Amazon argues that this question cannot generate common answers because "there would have to be individualized inquiries to prove that each Class Member ascribed the same meaning to the term 'hours worked.'" Pl.'s Reply Br. in Support of Mot. Class Certification, ECF No. 73, at 13. This too "is a question for another day."[6] *Davis v. Target Corp.*, 2023 WL 8373162, at *2 (E.D. Pa. Dec. 1, 2023). The revised classes then satisfy commonality.

### iii.    Typicality

Under the typicality requirement, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "This ensures the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *Newton v. Merrill Lynch, Pierce,*

---

[6] Like the question of whether the time spent on Amazon's premises after the screening but prior to clocking in was compensable under the PMWA, this question goes to the merits of the breach of contract claim and should be resolved at summary judgment. The Court will address Plaintiff's individual breach of contract claim later. But it does not need to answer that question on a classwide basis. After all, Rule 23 does not require at this stage that common questions "be answered, on the merits, in favor of the class." *Davis*, 2023 WL 8373162, at *2 n.2 (citation omitted).

*Fenner & Smith, Inc.*, 259 F.3d 154, 182-83 (3d Cir. 2001) (internal citations omitted). "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998) (quoting *Baby Neal*, 43 F.3d at 58) (internal quotation marks omitted).

Typicality is satisfied in this case. Plaintiff alleges that Amazon's failure to pay her for the time she spent in temperature screenings violates the PMWA and constitutes a breach of contract, or in the alternative, unjust enrichment and quantum meruit. Pl.'s Mot. Class Certification, ECF No. 54, at 1. The Class Members assert the same legal theories. *Id.* at 13. Further, Plaintiff and the Class Members rely on common evidence: they were hourly paid Amazon employees, they were paid under the same pay system, they were required to complete temperature screenings each shift, and they were not paid for the time completing such screenings. *Id.* at 8. Thus, Plaintiff's claims are typical of the claims of the Class Members.

### iv.    Adequacy

Under Federal Rule of Civil Procedure 23, the party seeking class certification must establish "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This rule "tests the qualifications of class counsel and the class representatives." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 428 (3d Cir. 2016). When considering class certification, courts should take special consideration as to whether class counsel "(1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995).

The adequacy requirement is met here. As a class representative, Plaintiff has participated in discovery and raises the same claims as Class Members. *See Barletti v. Connexin Software, Inc.*, 2024 WL 1096531, at *4 (E.D. Pa. Mar. 13, 2024) (holding that adequacy is satisfied when the class representative and class members assert the same claims and the class representative has participated in discovery). Class counsel also meets the adequacy requirement because class counsel have vigorously pursued this action and at least one other federal court has found class counsel adequate. *See Haro v. Walmart, Inc.*, 2024 WL 1160492, at *8 (E.D. Cal. Mar. 18, 2024). These facts all cut in favor of adequacy.

### v. Predominance

As explained before, this requirement "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc.*, 577 U.S. at 453 (citation omitted). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Id*. (quoting W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196-97 (5th ed. 2012)). In carrying out the predominance inquiry, "'court[s] must look first to the elements of the plaintiffs' underlying claims . . . through the prism of Rule 23' to assess whether the class members can prove their claims with 'evidence that is common to the class rather than individual to its members.'" *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 156 (3d Cir. 2023) (quoting *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127-28 (3d Cir. 2018)).

The revised classes satisfy predominance. Plaintiff presents undisputed evidence that Amazon had a uniform, written policy that required the Class Members to undergo unpaid

COVID-19 temperature screenings. Plaintiff challenges this screening policy, arguing that *Heimbach* requires Amazon to pay the Class Members for the time spent completing the screenings. "Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3)." *Villa v. Cargill Meat Sols. Corp.*, 2024 WL 4374958, at *14 (M.D. Pa. Oct. 2, 2024) (quoting *Haro v. Walmart, Inc.*, 2024 WL 1160492, at *9). Further, to establish liability and damages, Plaintiff relies on common evidence about Amazon's timekeeping system to show when the Class Members completed off-the-clock screenings and provide an estimate for time the Class Members spent in screenings. Pl.'s Reply Br. in Support of Mot. Class Certification, ECF No. 73, at 7. For class certification, "it is permissible to rely on an expert's estimates of typical task times." *Davis*, 2023 WL 8373162, at *5 (citations omitted).

In response to Plaintiff's argument, Amazon provides numerous reasons why Plaintiff cannot meet predominance. Amazon first argues that there are significant variations in the Class Member's screening experience. For example, Plaintiff underwent both the handheld thermometer and thermal camera protocols at one facility and then only the thermal camera one at another. Def.'s Resp. Mot. Class Certification, ECF No. 60, at 17. The two different protocols created variations in average wait times. *See id*. Amazon claims that these variations, and Plaintiff's failure to take them into account, mean that "employees need individualized, not representative, evidence to prove their case." *Ferreras*, 946 F.3d at 186. The fact that the implementation of Amazon's general screening policy resulted in some differences does not defeat predominance. *See, e.g.*, *Davis*, 2023 WL 8373162, at *5 ("[T]here is nothing necessarily wrong with certifying a class of employees that includes some discrepant liability and damages results because different employees worked different amounts of time—provided that there are

central questions that predominate over those differences.") (citing *Tyson Foods, Inc.*, 577 U.S. at 454-57)); *Villa*, 2024 WL 4374958, at *11 ("Differences in how the overarching screening policies were implemented at each facility do not negate Defendant's general directives regarding screening that applied to the three Pennsylvania facilities at issue.").

Next, Amazon states that questions regarding the "the total time spent in the screenings for a week, whether the class member clocked in before the start of their shift, and how much time was compensated beyond their shift start" produce significant variations among the class. Def.'s Resp. Mot. Class Certification, ECF No. 60, at 19. But the first question—total time spent in screenings—is a damages question that does not undermine predominance. *Talarico v. Pub. Partnerships, LLC*, 2022 WL 1524109, at *9 (E.D. Pa. May 12, 2022) ("[T]he need to calculate damages will not defeat predominance."); *see also Hargrove v. Sleepy's LLC*, 974 F.3d 467, 481 (3d Cir. 2020) (citing *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016)). The second question—whether the class member clocked in before the start of their shift—does create a substantial individualized liability issue, but this Court has resolved it by limiting the class to employees who clocked in with a physical time clock. And the last question—how much time employees were compensated beyond their shift start—goes to offsetting, which the Court has already rejected.

Amazon also attacks the ability of Plaintiff's expert reports to be applied classwide. Specifically, Amazon argues that neither of Amazon experts has provided a methodology that can be applied as a common method of proof because they rely on unwarranted assumptions— such as all facilities taking the same amount of time—and do not factor in the use of the app. Def.'s Resp. Mot. Class Certification, ECF No. 60, at 21. Both assertions fail. As discussed above, "it is permissible to rely on an expert's estimates of typical task times." *Davis*, 2023 WL

8373162, at *5 (citations omitted). Further, "[t]o the extent [Amazon] will challenge these reports as 'unrepresentative or inaccurate,' that in itself is a defense 'common to the claims made by all class members.'" *Alfonso v. FedEx Ground Package Sys., Inc.*, 2024 WL 1007220, at *14 (D. Conn. Mar. 8, 2024) (quoting *Tyson Foods, Inc.*, 577 U.S. at 457). And now that the revised classes include only employees who clocked in with a physical time clock, at least one of the reports can be used classwide because it applies "to those who exclusively used a physical clock." Def.'s Resp. Mot. Class Certification, ECF No. 60, at 21.

Amazon then asserts that individualized proof will be needed to prove any entitlement to a minimum wage or overtime. Whether a Class Member worked more than 40 hours a week without proper minimum wage or overtime compensation can be determined from common evidence about Amazon's timekeeping system. *See Talarico v. Pub. Partnerships, LLC*, 2022 WL 1524109, at *9 (collecting cases).

Finally, Amazon raises an Article III standing challenge. In *TransUnion LLC v. Ramirez*, the Supreme Court explained that "[e]very class member must have Article III standing in order to recover individual damages." 594 U.S. 413, 431 (2021). Amazon does not think that each Class Member can establish standing because some of them clocked in with the app before going through the screening and thus have already been paid for that time, which means that they have not suffered any actual injury. Def.'s Resp. Mot. Class Certification, ECF No. 60, at 24. This is no longer a problem because the revised classes have been limited to employees who clocked in with a physical time clock and thus did not receive compensation for undergoing the COVID-19 screenings during those shifts. *See* Pl.'s Reply Br. in Support of Mot. Class Certification, ECF No. 73, at 5.

The bottom line is that Plaintiff brings a common question about whether the time that Class Members spent undergoing COVID-19 screenings is compensable. This question can be answered by common proof—Amazon's uniform COVID-19 screening policy, the Pennsylvania Supreme Court's decision in *Heimbach*, expert reports, and Amazon's own timekeeping records. Plaintiff may also rely on this common proof, especially the expert reports and timekeeping records, to establish damages. These facts all prove that the common question predominates over individual liability and damages issues. This conclusion is supported by decisions from other courts in this Circuit and outside of it. *See, e.g.*, *Davis*, 2023 WL 8373162 (E.D. Pa. Dec. 1, 2023) (certifying a class seeking compensation for walking time under *Heimbach*); *Villa*, 2024 WL 4374958 (M.D. Pa. Oct. 2, 2024) (certifying a class seeking compensation for time spent in COVID-19 screenings under *Heimbach*); *Haro*, 2024 WL 1160492 (E.D. Cal. Mar. 18, 2024) (granting preliminary class certification for a class seeking compensation for time spent in COVID-19 screenings); *Martinez v. Amazon.com Servs. LLC*, 2024 WL 4817214 (D. Md. Nov. 18, 2024) (certifying a class seeking compensation for time spent in COVID-19 screenings in Amazon facilities); *Alfonso*, 2024 WL 1007220 (D. Conn. Mar. 8, 2024) (certifying a class seeking compensation for time spent in COVID-19 screenings).

### vi.    Superiority

The superiority requirement of Rule 23(b) "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533-34 (3d Cir. 2004) (internal quotation marks and citation omitted). In conducting this inquiry, the court must consider "the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely

difficulties in managing a class action." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d at 435.

Plaintiff meets the superiority requirement. Amazon claims that the individualized liability and damages issues that it has flagged in the commonality and predominance context defeat superiority because such issues would require "tens of thousands of mini-trials," which present serious difficulties in managing the case. Def.'s Resp. Mot. Class Certification, ECF No. 60, at 25 (quoting *Henson v. Progressive Premier Ins. Co. of Illinois*, 2024 WL 3051264, at *10 (E.D.N.C. June 10, 2024)). The Court rejects this claim because "[c]ommon proof will be at the center of both the liability and damages determinations, with individualized issues appearing to take a secondary—and calculations-only—role." *Davis*, 2023 WL 8373162, at *6. Thus, superiority has been met as well.

Since the Court has found that superiority, and all other Rule 23 factors, have been satisfied, the revised classes should be certified.

### B. Motion to Strike

Under Rule 26(a)(2), a party must disclose the identity of any expert witnesses who may testify at trial and that disclosure must be accompanied by a written report prepared by the expert witness. Fed. R. Civ. P. 26(a)(2). "When Rule 26's requirements are not met, district courts may exclude evidence on a motion to strike under Rule 37." *Cost v. Borough of Dickson City*, 858 F. App'x 514, 516 n.5 (3d Cir. 2021) (citing Fed. R. Civ. P. 37(c)(1)). However, "the exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *Id.* (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994)).

In deciding whether to exclude evidence, "the United States Court of Appeals for the Third Circuit has held that a district court must consider:

(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted;

(2) the ability of the party to cure that prejudice;

(3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and

(4) bad faith or wilfulness in failing to comply with a court order or discovery obligation."

*Pritchard v. Dow Agro Scis.*, 263 F.R.D. 277, 282 (W.D. Pa. 2009) (citing *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 148 (3d Cir. 2000)). In addition, district courts must "consider the importance of the excluded testimony." *Smith v. Katz*, 696 F. App'x 582, 593 (3d Cir. 2017) (citation omitted).

The Court declines to strike Amazon's report. Plaintiff moves to strike the Nickerson report because the information in it was not disclosed on time and was never produced during discovery. Pl.'s Mot. Strike, ECF No. 76, at 1. This untimeliness led to prejudice, according to Plaintiff, because the deadlines for Phase 1 discovery and class certification have closed and trial is only a few months away.  Pl.'s Reply Br. in Support of Mot. Strike, ECF No. 80, at 5. Even if the report is untimely, striking it would be inappropriate because any prejudice caused by the untimeliness "is slight, easily curable, and unlikely to disrupt trial." *Brown v. Robert Packer*

*Hosp.*, 341 F.R.D. 570, 574 (M.D. Pa. 2022). In fact, although trial was already scheduled, Plaintiff had another round of discovery to address the report. *See* Order, ECF No. 17.

The decision not to exclude the report is also supported by its importance. *Smith*, 696 F. App'x at 593. Not only was the report important to Amazon's arguments at this stage, but Plaintiff also relied on it heavily in an attempt to circumvent the individualized problems raised by the app. Pl.'s Reply Br. in Support of Mot. Class Certification, ECF No. 73, at 9. It is odd that Plaintiff now seeks to strike it. But Plaintiff cannot have her cake and eat it too. So the Motion to Strike is denied.

### C. Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020). A fact is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment must "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be

evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255. At the summary judgment stage, the court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019). Instead, the court's task is to determine whether there remains a genuine issue of fact for trial. *Id.*

Amazon states that Plaintiff's claims fail at summary judgment for four reasons: (1) because the temperature screenings do not count as compensable time since they were mandated by the government; (2) because she was paid more than the minimum wage for every hour worked, (3) because her offer letters do not promise compensation for time spent in temperature screenings, and (4) because the temperature screenings benefitted Plaintiff Connelly. *See* Def.'s Mot. Summ. J., ECF No. 53, at 2-4. Only the second argument partially succeeds.

### 1.   Whether the COVID-19 Screenings Count as Compensable Time

Counts I and II of Plaintiff's Second Amended Complaint raises PMWA claims for the unpaid wages from all the time spent in Amazon's COVID-19 screenings. In Count I, Plaintiff brings a PMWA claim "for 'all hours worked' in a workweek." SAC, ECF No. 20, at ¶¶ 64-68 (citing 43 P.S. § 333.104(a)). In Count II, she brings another PMWA claim for overtime compensation. *Id.* at ¶¶ 69-73. Both claims rely on *Heimbach*.

The PMWA entitles employees to compensation for "all hours worked" in a week. *See* 43 P.S. § 333.104(a). Although the PMWA does not define "hours worked," the Pennsylvania Supreme Court has explained that the phrase includes four categories of an employee's time, with the first two being when an "employee is required by the employer to be on the premises of

the employer" and when an employee is required to be at her "prescribed work place." Def.'s Mot. Summ. J., ECF No. 53, at 12 (citing 34 Pa. Code § 231.1(b)).

Amazon attempts to circumvent *Heimbach* by saying that its own screening policy was the government's fault. In response to COVID-19 Pennsylvania issued the DOH Order, which allowed life-sustaining businesses, including Amazon, to remain open during the pandemic and required those businesses to "implement temperature screening before an employee enters the business, prior to the start of each shift . . . and send employees home that have an elevated temperature or fever of 100.4 degrees Fahrenheit or higher." *Id*. at 11. Amazon argues that the time Plaintiff spent in screenings does not fall under any category of "hours worked" because the screenings were required by Pennsylvania through its DOH Order, not Amazon as an employer. *Id*. And none of the categories of Section 231.1 provide compensation when a government requires an employee to be at work.

The Court agrees with Plaintiff that *Heimbach* contradicts Amazon's creative argument. In that case, the facts were almost identical to the ones here: Amazon warehouse workers in Pennsylvania claimed that they were entitled to pay for the time they spent waiting for and undergoing security screenings after their shifts.[7] *Heimbach*, 255 A.3d at 193-94. The state supreme court concluded that "all time spent by the employees waiting to undergo, and undergoing, the security screenings constitutes 'hours worked' within the meaning of Section 231.1 and, thus, within the meaning of the PMWA." *Id*. at 204 (citation omitted). Like *Heimbach*, this case revolves around "time that warehouse workers spend on a ubiquitous activity that occurs after (and here, before) their primary job-related tasks." *Davis v. Target*

---

[7] Here, the employees were required to undergo COVID-19 screenings before their shifts, not after.

*Corporation*, 2025 WL 553354, at *8 (E.D. Pa. Feb. 19, 2025). This Court then will follow *Heimbach*'s conclusion that "hours worked" under the PMWA includes time spent in COVID-19 screenings, which invalidates Amazon's argument about who actually required the screenings. Other courts in this Circuit have also followed the state supreme court's lead in *Heimbach*. *See id*. at *9 (collecting cases).

Even if *Heimbach* did not control this issue, Amazon's argument fails because it contains a logical error. Amazon attempts to circumvent the fact that the PMWA requires compensation for time spent undergoing COVID-19 screenings by stating that it was the government, not Amazon, that required the screenings. But that argument ignores that Amazon had a written policy that required its employees to undergo COVID-19 screenings before they entered the facilities. Def.'s Statement of Undisputed Material Facts at ¶ 18. It is this policy that Plaintiff challenges under *Heimbach*, not the DOH Order. *See* Pl.'s Mot. Class Certification, ECF No. 54, at 16. And because Amazon is Plaintiff's employer, the PMWA applies. *See* 34 Pa. Code § 231.1(b). Therefore, Plaintiff's PMWA claims survive this argument.

### 2. Whether Plaintiff's Straight Time Claim Is Cognizable Under the PMWA

The PMWA requires employers to "pay employees a base rate and overtime pay." *Nardelli v. Lamparski*, 2023 WL 3901299, at *4 (W.D. Pa. June 8, 2023) (citing 43 P.S. § 333.104). In her Second Amended Complaint, Plaintiff brings a PMWA claim in Count I for "compensation for 'all hours worked' in a workweek" and a PMWA claim in Count II for overtime. *Compare* SAC, ECF No. 20, at ¶¶ 64-68, *with id*. ¶¶ 69-73. Amazon argues that Count I is a "straight time" claim that "fails because Plaintiff cannot recover additional non-overtime wages under the PMWA for workweeks under 40 hours when Amazon paid her over twice the

required minimum wage (at least $15 compared to $7.25 per hour) even accounting for time in COVID-19 screening." Def.'s Reply Br. in Support of Mot. Summ. J., ECF No. 71, at 2. Amazon provides legal support for this argument. *See Nardelli v. Lamparski*, 2023 WL 3901299, at *3 n.2, *4; *Rui Tong v. Henderson Kitchen Inc.*, 2018 WL 4961622, at *5 (E.D. Pa. Oct. 12, 2018); *Ahmed v. Highway Freight Sys., Inc.*, 2014 WL 6473375, at *4 (E.D. Pa. Nov. 19, 2014).

Plaintiff's response to this argument dooms Count I. She does not dispute Amazon's argument. Rather, she states that she only "seeks overtime wages under the PMWA" and that "[t]he only straight time claims that Plaintiff is seeking are being raised through Plaintiff's breach of contract and quantum meruit/unjust enrichment claims, not the PMWA." Pl.'s Resp. Mot. Summ. J., ECF No. 61, at 11. Taking Plaintiff at her word then, she should only have one PMWA claim: the one for overtime which is Count II of the Second Amended Complaint. So the PMWA claim in Count I falls at summary judgment. *McCowan v. City of Philadelphia*, 603 F. Supp. 3d 171, 193 (E.D. Pa. 2022) ("[W]hen a plaintiff fails to raise an argument in opposition to a motion for summary judgment, it is waived.").

Amazon's second argument that the PMWA claims fail because of Plaintiff's use of the app are not persuasive. As the Court has discussed above, offsetting is not required under the PMWA. Therefore, the fact that Plaintiff used the app to clock in before entering the building on some days does not defeat the overtime claim. And while the Court agrees that Plaintiff cannot establish liability for those shifts, there is no dispute that she did clock in with a physical time clock on other days. *See* Def.'s Mot. Summ. J., ECF No. 53, at 14. *Heimbach* requires compensation for those off-the-clock screenings. So Plaintiff's Count II PMWA overtime claim continues past summary judgment.

### 3.  Whether Plaintiff's Contract Establishes an Entitlement to
### Compensation for Time Spent in the COID-19 Screenings

In Count III of the Second Amended Complaint, Plaintiff asserts a breach of contract claim against Amazon for failing to pay her for the time spent in COVID-19 screenings. SAC, ECF No. 20, at ¶¶ 74-87.

To establish a claim for breach of contract under Pennsylvania law, a "plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *McShea*, 995 A.2d at 340 (quoting *Hart v. Arnold*, 884 A.2d at 332). "[F]or an agreement to exist, there must be a 'meeting of the minds,' . . . the very essence of an agreement is that the parties mutually assent to the same thing." *Accu-Weather, Inc.*, 625 A.2d at 78 (citation omitted).

Plaintiff's breach of contract claim relies on the theory that Amazon agreed to pay her for "all hours worked." Pl.'s Resp. Mot. Summ. J., ECF No. 61, at 13. Since 2009, the term "hours worked" has included "all the time that the worker is required by the employer to be on the employer's premises." *Lugo v. Farmer's Pride, Inc.*, 967 A.2d 963, 969 (Pa. Super. Ct. 2009). *Heimbach* has established that this term now includes the time spent in COVID-19 screenings. Thus, Plaintiff states that she is entitled to pay for the time she spent in screenings because Amazon agreed to pay her for "all hours worked," which triggers *Heimbach*. Amazon responds by splitting hairs: it claims that Plaintiff's contract did not promise compensation for "all hours worked." It simply agreed to pay her "$15.00 per hour." Def.'s Statement of Undisputed Material Facts at ¶ 2. So *Heimbach* does not apply and Plaintiff cannot point to any other contractual provision requiring Amazon to pay her for the time she spent in screenings. Def.'s Mot. Summ. J., ECF No. 53, at 15-18.

Here, the Court reads "per hour" and "all hours worked" to mean the same thing. As Amazon states, "a court is constrained to construe the parties' contract based on the parties' outward and objective actions—particularly, the plain terms of their written agreement." *Nicholas v. Hofmann*, 158 A.3d 675, 693 (2017) (citations omitted). The dictionary definition of "per" is "for each."[8] So "per hour" in this context means "for each hour." While for "each" hour refers to the individual hours, "all" hours refers to the hours as a whole. They still refer to the same general group, meaning that they have the same plain meaning.[9]

Of course, Plaintiff's contract only uses "per hour" and the PMWA and *Heimbach* focus on "all hours worked." Any difference between the phrases then would require "per hour" to describe something other than "per hour worked." But that would be an absurd reading since employment contracts typically agree to compensation for time worked. *Lexington Ins. Co. v. W. Pennsylvania Hosp.*, 423 F.3d 318, 326 (3d Cir. 2005) ("This reading highlights the important principle of Pennsylvania contract law, which requires courts to give effect to all of the language of the agreement whenever possible."). Therefore, in the context of this employment contract, the Court finds that "per hour" and "all hours worked" mean the same thing, which allows Plaintiff to seek a breach of contract claim under *Heimbach*.

*Heimbach*'s broad language supports this conclusion. The state supreme court acknowledged that the PMWA "manifests this Commonwealth's strong public policy protecting an employee's right to be adequately compensated for all hours for which they work." *Heimbach*, 255 A.3d at 200. Seizing on that language, the *Heimbach* court handed down a

---

[8] *Per*, Merriam-Webster, https://www.merriam-webster.com/dictionary/per (last visited Feb. 27, 2025).
[9] *Every vs. All vs. Each*, GrammarforExperts, https://grammarforexperts.com/every-vs-all-vs-each/ (Jan. 3, 2023).

sweeping opinion—it did not "confine[] its holding to the security screening fact pattern before it" and it used "expansive language" to flesh out the meaning of "hours worked" under the PMWA. *Davis*, 2025 WL 553354, at *8. Amazon's position would allow defendants to escape liability by avoiding three magic words in their employment contracts: "all hours worked." This workaround is contradicted by the breadth of *Heimbach*'s mandate. Thus, Plaintiff's breach of contract claim withstands summary judgment.

### 4. Whether Plaintiff's Unjust Enrichment and Quantum Meruit Claims Fall Because She Benefited from the COVID-19 Screenings

At the end of her Second Amended Complaint—Counts IV and V—Plaintiff brings claims for unjust enrichment and quantum meruit. SAC, ECF No. 20, at ¶¶ 88-107.

"A claim for damages in quantum meruit is fundamentally an equitable claim of unjust enrichment in which the party seeking recovery must demonstrate: (1) [the] benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 179 A.3d 1093, 1102 (Pa. 2018)

In this case, Amazon stresses the benefits that Plaintiff received from the COVID-19 screenings. For example, the screenings reduced the chance that Plaintiff would get infected by the virus and ensured a safe workplace for her and her coworkers. Def.'s Mot. Summ. J., ECF

No. 53, at 19-20. So even if Amazon did receive a benefit by implementing its screening policy, the fact that the screenings benefitted Plaintiff as well prevents Plaintiff from establishing unjust enrichment and quantum meruit claims. *Argue v. Triton Digital Inc.*, 734 F. App'x 148, 151 (3d Cir. 2018) ("Unjust enrichment does not exist whenever one party benefits another; rather, a plaintiff must show circumstances that would make it unconscionable for the defendant to retain the benefit conferred.") Amazon turns to two cases in support of this argument: *Perez v. Walmart, Inc.*, 2021 WL 5741484, at *3 (W.D. Mo. Oct. 25, 2021) and *Johnson v. Amazon.com Services, LLC*, 2023 WL 8475658, at *3 (N.D. Ill. Dec. 7, 2023).

Amazon's final argument ignores a key fact: *Heimbach* requires compensation for the time spent in COVID-19 screenings. 255 A.3d at 204. And as explained before, "if an activity is considered 'work,' it follows that an employer's decision to withhold compensation for that work is unjust or inequitable." Order, ECF No. 32, at 1 n.1 (citing *Steiner v. Mitchell*, 350 U.S. 247 (1956); *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361 (3d Cir. 2007)). At the very least, a reasonable jury could find that withholding compensation required under *Heimbach* is unjust. *See Physicians Healthsource, Inc.*, 954 F.3d at 618. The two cases cited by Amazon are of no help here because neither one dealt with COVID-19 screening time that was required to be compensated by a state supreme court decision.

Responding to this reality, Amazon states that "[t]he general rule in Pennsylvania is that a common law remedy is not available where one is provided by statute." Def.'s Mot. Summ. J., ECF No. 53, at 20 (citing *Jackson v. Centennial Sch. Dist.*, 501 A.2d 218, 220 (Pa. 1985)). But the Pennsylvania Supreme Court explained in that case that the statutory framework precluded other remedies. *Jackson*, 501 A.2d at 219 ("In essence, the key to our analysis is the clear legislative intent to confine the role of the judiciary to one of review of an administrative

process."). "[Amazon] ha[s] not shown how the PMWA provides a defined remedy within the meaning of § [231.1] or otherwise bars the assertion of an alternative legal theory of unjust enrichment for the failure to pay [for time spent undergoing COVID-19 screenings]." *Hively v. Allis-Chalmers Energy, Inc.*, 2013 WL 2557629, at *4 (W.D. Pa. June 10, 2013). So the unjust enrichment and quantum meruit claims move beyond summary judgment.

## IV.    CONCLUSION

For the reasons laid out above, Plaintiff's Motion for Class Certification is granted. The Revised Classes are certified. The Motion to Strike is denied. The Nickerson report is not excluded. And Amazon's Motion for summary judgment is granted in part and denied in part. All but Count I of the Second Amended Complaint survives summary judgment. An appropriate Order follows.

BY THE COURT:


 */s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge