IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RENEE CONNELLY,<br>        Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES, LLC,<br>        Defendant. | :<br>:<br>:<br>:  Civil No. 5:23-cv-02768-JMG<br>:<br>:<br>: |

**ORDER**

**AND NOW**, this   14th   day of May, 2025, upon consideration of Defendant's Motion for Reconsideration (ECF No. 91), Plaintiff's Response to Defendant's Motion for Reconsideration (ECF No. 102), Defendant's Reply Memorandum in Support of Its Motion for Reconsideration (ECF No. 107), and Plaintiff's Sur-Reply to Defendant's Reply to Its Motion for Reconsideration (ECF No. 129), **IT IS HEREBY ORDERED** that the Motion for Reconsideration (ECF No. 91) is **DENIED**.[1]

---

[1]   In 2021, the Pennsylvania Supreme Court held that "all time spent by the employees waiting to undergo, and undergoing, the security screenings constitutes 'hours worked' within the meaning of Section 231.1 and, thus, within the meaning of the PMWA." *In re Amazon.com, Inc.*, 667 Pa. 16, 255 A.3d 191, 204 (2021) (*Heimbach*). Plaintiff filed this class action suit against her employer, Defendant Amazon.Com Services, LLC (Amazon), seeking due compensation under *Heimbach* for the time Amazon required her to undergo COVID-19 screenings each shift without pay.

On November 15, 2024, Plaintiff moved for certification of two classes and two subclasses under Federal Rule of Civil Procedure 23(a) and (b)(3). The biggest issue facing the proposed classes was the A-to-Z mobile application. Amazon employees had two options for clocking in—physical time clocks and the A-to-Z mobile application. Many employees used the app and some of them did so before they even went through the screenings. This fact prevented the common question—whether the time spent undergoing COVID-19 temperature screenings is compensable—from generating a common answer because the employees who punched in with the app *before* they completed the screenings were already paid for that time. Thus, each Class Member would still have to prove that they were not actually paid for the time they spent going

through the screenings and thus were entitled to more compensation than they received. *See Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019).

To resolve this problem, the Court limited the proposed classes by certifying two classes made up of employees who clocked in with a physical time clock. Now before the Court is Amazon's motion for reconsideration asserting that the Court's solution created error and injustice. In attempting to prove this point, Amazon relies on moribund arguments that have already been knocked down. A motion for reconsideration, however, "is not to be used to give a litigant a second bite at the apple, nor may it be used to rehash arguments which have already been briefed by the parties and considered and decided by the court." *Johnson v. BB & T Corp.*, 2018 WL 1518618, at *2 (E.D. Pa. Mar. 28, 2018). That alone spells doom for Amazon. But even a full consideration of Amazon's claims does not change anything.

Before getting to the substance of Amazon's motion for reconsideration, the Court begins by surveying the legal terrain. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Reconsideration is proper where the moving party demonstrates one of three grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *N. River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

Amazon moves for reconsideration on the third ground—that the Court's decision to certify the modified classes led to a clear error of law and manifest injustice. Specifically, Amazon claims that reconsideration is appropriate for three reasons: that Plaintiff is no longer a typical or adequate class representative, that removing the A-to-Z-app-clock-in shifts prevents the Class Members from calculating hours in a workweek, and that the Court improperly limited Amazon's opportunity to develop evidence in support of its arguments that the Court's classes should be decertified by refusing to extend discovery. None of these arguments succeed.

First, Amazon argues that reconsideration is appropriate because Plaintiff is no longer typical of the certified classes. Typicality requires "that the class representative's interests and incentives will be generally aligned with those of the class as a whole." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009) (citations omitted). Amazon asserts that there is a "misalignment" in Plaintiff's interests and "those of the class" because she clocked in with a physical time clock only a handful of times, giving her a greater incentive to focus on her individual claims. *See Frompovicz v. Niagara Bottling, LLC*, 420 F. Supp. 3d 361, 371 (E.D. Pa. 2019). But typicality focuses on "liability issues, not damages issues." *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 217 (M.D. Pa. 2012). Plaintiff and the class bring the same claim—that, under *Heimbach*, they are entitled to pay for time they spent in Amazon's COVID-19 screenings—and their claims stem from the same policy—Amazon's mandatory screening policy. So typicality exists. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998) ("'[E]ven relatively pronounced factual differences will generally

2

not preclude a finding of typicality where there is a strong similarity of legal theories' or where the claim arises from the same practice or course of conduct.").

Amazon also says that the modified classes create an adequacy problem. Adequacy asks whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Amazon contends that given Plaintiff's infrequent use of the physical time clocks, she "may lack the same financial stake as the other members of the class" and "may have different incentives in terms of how much time, energy, and money she is willing to spend pursuing the claim." *Schering Plough*, 589 F.3d at 602. The fact that Plaintiff only clocked in with a physical time clock a handful of times does limit her damages. But there is no de minimis defense under Pennsylvania law, so Plaintiff still has a claim for unpaid wages just like the rest of the class. *Heimbach*, 255 A.3d at 204-09. The only difference then is that some Class Members may be entitled to greater damages awards because they clocked in with a physical time clock more times than Plaintiff did. That does nothing to undermine adequacy, however, because "[t]he fact that individual plaintiffs may be entitled to differing amounts of compensation is not fatal to a class action." *Bellas v. CBS, Inc.*, 201 F.R.D. 411, 421 (W.D. Pa. 2000) (internal quotations marks and citation omitted). Thus, because Plaintiff brings the same claim as the rest of the class and has participated in discovery, she satisfies adequacy as well. *See Barletti v. Connexin Software, Inc.*, 2024 WL 1096531, at *4 (E.D. Pa. Mar. 13, 2024) (holding that adequacy is satisfied when the class representative and class members assert the same claims and the class representative has participated in discovery).

Second, Amazon contends that clarification of the revised classes is proper because excluding the A-to-Z-app-clock-in shifts prevents the Class Members from calculating hours in a workweek. To establish an overtime claim, Class Members must prove that they worked more than forty hours in a single workweek. *See* 43 P.S. § 333.104(c) ("[N]o pay for overtime in addition to the regular rate shall be required except for hours in excess of forty hours in a workweek."). Amazon says that excluding the A-to-Z-app-clock-ins from the revised classes entirely means that Class Members cannot rely on those shifts to determine how many hours they worked each week, which stops them from proving that they worked enough hours to receive overtime pay. But the Court's revised classes only excludes A-to-Z-app-clock-ins for the purpose of determining which shifts Class Members are entitled to compensation for. As Plaintiff shows through her own pay records and clock-in records, Class Members can still use app shifts for other purposes, such as calculating the hours in a workweek. *See* ECF No. 102 at 5.

If A-to-Z-app-clock-ins are used to calculate the hours in a workweek, according to Amazon, "Plaintiff still would not have a valid overtime claim, because she clocked in a total of 2.92 minutes before badge swiping across her three A-to-Z app shifts." ECF No. 107 at 7. Put another way, "almost three of her already- recorded minutes were spent outside the facility *before* she began COVID-19 screening." *Id*. (emphasis in original). This argument is unpersuasive. As this Court already explained, "Amazon has not cited any legal authority, and the Court has not found any, that requires the Court to offset under the PMWA." ECF No. 84 at 19. Plus, using clock-ins from both the app and physical time clocks is exactly how Amazon recorded employee work time and calculated overtime. So the Court will apply the same method Amazon has used, and likely still uses, to determine the hours in a workweek.

3

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

Third, Amazon argues that reconsideration is necessary because the Court improperly limited its opportunity to develop evidence in support of its decertification efforts by refusing to extend discovery. After this Court's certification ruling, Amazon requested additional discovery and the Court denied the request. Amazon again seeks to engage in more discovery. The discovery "will focus on the time class members spent in line and passing through COVID-19 screening, as well as their activities before they entered their work sites for COVID-19 screening and during the time between entering the work site and clocking in." ECF No. 91 at 16-17. Such discovery is necessary, Amazon says, to support its argument that the modified classes should not have been certified.

The Court's certification decision did not create new classes out of whole cloth. Rather, the Court used the more limited definition of one of Plaintiff's proposed subclasses to certify the two revised classes. ECF No. 84 at 15-16. And there is no doubt that Amazon knew about the possibility of such a class being certified during the discovery period. After all, in its response to Plaintiff's motion for class certification, filed almost two entire months before discovery ended, Amazon claimed that a class "limited to persons who used a physical time clock" should not be certified. ECF No. 8 (internal quotation marks omitted). Therefore, Amazon was on notice about who could be included in the certified classes and—as it conceded during the March 13, 2025 telephonic status conference—it could have conducted the discovery it now seeks earlier in the case. The Court will not now allow Amazon to conduct additional discovery because it failed to do so then. *McKenna v. Healthease, Inc.*, 573 F. App'x 190, 192 (3d Cir. 2014) ("We agree with the District Court that McKenna offered no convincing justification for her failure to conduct this discovery earlier in the litigation.").

Because all of Amazon's arguments fail, its motion for reconsideration is denied.

4